IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICARDO RODRIGUEZ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18 CV 7951 |
| CHICAGO POLICE OFFICERS REYNALDO GUEVARA, ERNEST HALVORSEN, RICHARD CURLEY, ROBERT BIEBEL, ED MINGEY, LEE EPPLEN, M. SANDERS, J. MOHAN, AND UNKNOWN OFFICERS; and the CITY OF CHICAGO. | ) Judge Tharp ) Magistrate Judge Cox ) ) JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO BIFURCATE**

Ricardo Rodriguez spent almost 25 years serving a *de facto* life sentence in the toughest prisons in the Illinois Department of Corrections system for a murder he did not commit. He is just one of a long line of men who suffered the same fate, and one in a long line of men who have been exonerated in the last several years after new evidence surfaced that Defendant Reynaldo Guevara and others from Area Five of the Chicago Police Department framed them for crimes of which they were innocent. Ricardo Rodriguez has alleged that the cases of these people are intertwined – the policies and practices of the Chicago Police Department contributed to this pattern of misconduct.

The City seeks to bifurcate *Monell* claims in this case during discovery and trial, and thereby prevent the truth about its unconstitutional policies and practices from ever seeing the light of day. Courts in the Northern District of Illinois have repeatedly rejected the City's bifurcation requests. This Court should do the same.

First, under established law and contrary to the City's argument, Rodriguez's *Monell* claims do not depend on whether an individual Defendant is liable. The City knows this because twice recently federal juries have found it liable on the same *Monell* theory of systemically suppressing investigative materials in street files, and that finding is independent of those on individual liability.

Second, bifurcation will not save time or resources. On the contrary, it would multiply the work of the Court and the parties, and it would cause inconvenience for witnesses. The *Monell* claims will be litigated regardless of the outcome of the individual case, and so bifurcation will only serve to duplicate the proceedings. That duplication would be particularly inefficient given that much of the evidence will be admissible and relevant both on the *Monell* claims and on the individual claims.

Third, the City's argument that bifurcation is necessary to avoid prejudice to Defendants is incorrect. The City identifies no real prejudice it will suffer. With respect to the individuals, most of the *Monell* evidence is admissible against them at trial without any danger of unfair prejudice, and in fact the Defendants have already collected and produced this evidence in other recent litigation.

Moreover, any concern that they might be prejudiced can be managed with limiting instructions. And even if there were prejudice, it would not justify bifurcation at the start of the case. On the other hand, Rodriguez would suffer great prejudice if the City's motion was granted, and that prejudice must be considered.

Fourth, the City's position cannot be adopted because it violates the Seventh Amendment. The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial. But those two trials will necessarily require two separate juries to consider the same factual issues. The Seventh Amendment forbids that approach.

Fifth, the City proposes a "Limited Consent to Entry of Judgment," pursuant to which the City would deny liability but accept judgment against it if Rodriguez first establishes liability against the individual Defendants. This proposal is procedurally improper and it cannot be used to eliminate Rodriguez's *Monell* claim. The City's proposal should be ignored.

Finally, there are important non-economic reasons for the *Monell* claims to proceed. The City's policies at issue have been and remain terribly broken as evidenced by the repeated findings against it on this score. The cost, measured in centuries of life lost, is beyond comprehension. Rodriguez has filed this complaint in part to ensure that these policies do not continue, and meaningful reform takes place.

## BACKGROUND

Ricardo Rodriguez was a young man when he was wrongfully convicted of the 1995 murder of his friend Rodney Kemppainen, a man experiencing homelessness who was shot on the street. Dckt. 1 ¶¶ 17, 45. Rodriguez received a 90-year *de facto* life sentence. His conviction was not an accident; he was framed by Guevara and other Defendants, who fabricated purported eyewitness

testimony and other evidence to implicate Rodriguez, and suppressed exculpatory evidence, including from eyewitnesses who could have established Rodriguez's innocence. *Id.* ¶¶ 34-40, 47.

To procure Rodriguez's arrest and conviction, Defendants fabricated a tip implicating Rodriguez in the crime, and used that as a pretext to coerce eyewitnesses into implicating Rodriguez, even though the witnesses had previously said Plaintiff was not the shooter. *Id.* ¶¶ 24-25, 35-37. They ignored and suppressed evidence from eyewitnesses who had seen the shooting and gave police information that pointed away from Rodriguez. *Id.* ¶ 47. In prior questioning, Guevara has exercised his Fifth Amendment right not to incriminate himself in response to questions about his misconduct. *Id.* ¶ 8.

Rodriguez's wrongful conviction would not have occurred but for the City's policies and practices. *Id.* ¶¶ 55-72, 110-16. The City failed to train, supervise, and discipline its officers—particularly Guevara—and there are no fewer than 70 documented cases since 1986 where Chicago Police Detectives amassed "evidence" against innocent persons for serious crimes they did not commit. *Id.* ¶¶ 55-72. Important in this case, the City had a practice of suppressing important investigatory materials in street files, which were kept within the police department but never sent to state prosecutors, criminal defendants, or their attorneys. *Id.* ¶¶ 59-60. Juries in two recent trials have found the City liable for maintaining this practice from 1984 until after Rodriguez's conviction. *Rivera v. Guevara*, No. 12 C 4428, Dckt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017).

## DISCUSSION

This Court has discretion to decide particular claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate

3

does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* FED. R. CIV. P. 42(b), advisory cmts. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); 7 FEDERAL PRACTICE & PROCEDURE § 2388 (2016) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."); *A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted against bifurcation."). In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620. Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012), particularly in cases like this.[1] In two other cases involving claims of misconduct by Guevara and the same *Monell* claims against the City, Judge Lee and Judge Kokoras, respectively, recently denied nearly identical motions to bifurcate. *Sierra*, No. 18 C 3029, Dckt. 84; Exhibit A (transcript of ruling); *Gomez*, No. 18 C 3335, Dckt. 65; Exhibit B (Order denying motion). The City provides no justification for bifurcation in this case.

---

[1] See *Tate v. City of Chicago*, 18 C 7439, Dckt. 91 (N.D. Ill. May 20, 2019); *Gomez v. Guevara*, No. 18 C 3335, Dckt. 65 (N.D. Ill. April 8, 2019); *Sierra v. Guevara*, No. 18 C 3029, Dckt. 84 (N.D. Ill. Nov. 7, 2018); *Smith v. Burge*, No. 16 C 3404, Dckt. 205 (N.D. Ill. Aug. 9, 2018); *Rivera v. Guevara*, No. 12 C 4428, Dckt. 443 (N.D. Ill. May 18, 2018); *Hood v. Chicago*, No. 16 C 1970, Dckt. 86 (N.D. Ill. Jan. 9, 2017); *Estate of Loury*, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013); *Allison v. Gallagher*, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012); *Awalt*, 2012 WL 1161500; *Martinez v. Cook County*, 2011 WL 4686438, at *3-4 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, 2011 WL 1466599, at *2-5 (N.D. Ill. Apr.18, 2011); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011); *Ott v. Milwaukee*, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County*, 2010 WL 2720754, at *1-3 (N.D. Ill. July 8, 2010); *Bell v. Chicago*, 2010 WL 432310, at *2-4 (N.D. Ill. Feb.3, 2010); *Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb.3, 2010).

**I.    THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY, AND A TRIAL ON THE *MONELL* CLAIMS WILL CERTAINLY TAKE PLACE**

The City's central argument is that its own liability depends on a jury first finding individual liability. Dckt. 44 at 4-8. That is incorrect on the law and the facts. "The actual rule," the Seventh Circuit said in *Thomas*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d at 305; *see also Swanigan v. Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, . . . a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Judges in this District analyze the propriety of bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual officers not liable. *Bonds v. City of Chicago*, 2018 WL 1316720, at *4-5 (N.D. Ill. Mar. 14, 2018); *Pickett v. Dart*, 2014 WL919673 (N.D. Ill. Mar. 10, 2014); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Martinez*, 2011 WL 4686438, at *1; *Cage*, 2010 WL 3613981, at *1; *Evans v. Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). Cases like this one, where a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

Defendant contends a *Monell* verdict is impossible without individual liability, but its brief does not explain why a verdict against the City would *necessarily* be inconsistent with a verdict in favor of the individuals. *Carter*, 2011 WL 1466599, at *3 ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation."). There is no doubt *Monell* liability is possible without individual liability. The City knows this is true because the lawyers representing the City here lost a *Monell* verdict last year in *Rivera*, which presented the same *Monell* theory at issue here: that the City systematically suppressed street files. The verdict against the City in *Rivera* is independent of the jury's findings against

5

Guevara and other individuals in that case. The same is true of *Fields*, 2017 WL 4553411, at *3-4. And the same would be true in this case. A verdict for Rodriguez on his *Monell* theory that the City's file-keeping system prevented transmission of exculpatory information to the criminal justice system would be entirely consistent with a verdict that each individual Defendant did not personally suppress evidence. Put simply, a jury might find that the individuals put items of evidence where they were supposed to in Chicago Police Department files, but that the City had no mechanism for ensuring those files got turned over to Rodriguez or attorneys involved in his criminal prosecution.[2] *Monell* liability does not depend on individual liability, a verdict for the individuals will not necessarily dispose of the *Monell* claims, and a trial on those claims will be necessary no matter what.[3] The relationship between the individual and municipal claims in this case weighs against bifurcation.[4]

---

[2] Plaintiff will present evidence demonstrating a number of ways in which City policies prevented investigative information from reaching the criminal justice system, but one example illustrates the point: the City responded to subpoenas for documents from criminal defense attorneys through the so-called Subpoena Service Unit, which often would not gather investigative materials from the detective division Areas and other units of the police department where investigative files relating to cases were kept. There were no written policies that governed the subpoena service unit and civilian personnel responding to subpoenas received no training. As a result, a systemic problem at the relevant time was that the City's response to subpoenas sent for records would exclude material exculpatory and impeachment records in the investigative files. The jury might find that this policy of the City prevented Rodriguez from receiving investigative materials, even if the individual Defendants are not liable for that suppression.

[3] Rodriguez's case is different in this way than cases cited by the City, such as *Veal v. Kachiroubas*, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014), where the plaintiff's *only* claim was that he was convicted after a confession was coerced from him; or *Clarett*, No. 09 C 6918, 2011 WL 37838, at *1 (N.D. Ill. Jan. 3, 2011), which concerned a traffic stop and false arrest (and actually denied the motion to bifurcate). As *Heller* discussed in the excessive force context, 475 U.S. at 799, a claim of municipal liability that depends entirely on an act of misconduct by an individual cannot proceed in the absence of individual liability. Meanwhile, the result in *Andersen v. Chicago*, 2016 WL 7240765, at *3-4 (N.D. Ill. Dec. 14, 2016)—and *Williams v. Chicago*, 2018 WL 2561014, *11-12 (N.D. Ill. June 1, 2018), which simply cites *Anderson*—is based on a misunderstanding of the street-files theory. In those cases, courts decided the street-files practice depended on an individual defendant suppressing the street file. But that misses the point that the failure *to transmit* those files to the criminal justice system is a matter of City policy and not individual misconduct. The individual always creates a file, but the constitution is violated when that file is not handed over. The file is not handed over because the City policy prevented that from happening, not *necessarily* because of any misconduct.

[4] In many cases, arguments against bifurcation are based on a contention that the City can still be liable for constitutional violations caused by municipal policies even if qualified immunity is granted to individuals. Though that argument is not necessary to deny bifurcation, it has force here as well. The City argues the individual Defendants are unlikely to be immune from liability. Dckt. 44 at 8. But the same individuals before the Court here routinely claim immunity. *Rivera v. Guevara*, 2018 WL 2183998, at *31; and the fact that the City says its officers will likely lose their claim of immunity is meaningless, unless the individuals actually disclaim immunity. If immunity is available to the individuals, then that too is a way that the City might be liable even if the individuals are not. *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Martinez*, 2011 WL 4686438, at *2; *Cage*, 2010 WL 3613981, at *1.

## II. BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES, AND INCONVENIENCE WITNESSES

Because the *Monell* claims in this case will be tried no matter what, Defendant's proposal means there would be two separate cases tried consecutively. That approach would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. These factors also weigh heavily in favor of denying bifurcation.

### A. Defendant's Proposal Would Massively Waste Resources

If Defendant's proposed bifurcation was adopted, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the individual case, and the second to supplement that record with evidence necessary for the *Monell* claims. That would mean two depositions of Defendants and most other fact witnesses (one to ask them about their role in the individual case, and a second to ask questions relevant to City policies and practices). These witnesses would literally have to be produced for their depositions on two separate occasions, months (or likely years) apart. There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions (because some topics on which City testimony is necessary will pertain to both the individual and *Monell* cases and other topics will relate solely to *Monell*). Two rounds of expert reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties.

Following each round of discovery, there would be dispositive motions for the Court to resolve. Perhaps without municipal claims in the case, the individual Defendants would decide to slow the process down further by taking a qualified-immunity appeal from the denial of their motions for summary judgment. After that, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions *in limine* (with responses and replies), two pretrial orders, and two jury instruction conferences. All of this double work would be avoided entirely if it was done once, in a unified proceeding, without bifurcating the *Monell* claims.

7

Perhaps most importantly, Defendant's plan would require two trials. This would impose a huge burden on the Court, on witnesses, and on the parties. Each witness would be called twice—once to talk about the facts of the individual case, and a second time to talk about the policies of the City, and the way those policies impacted the individual case. Experts would have to fly to Chicago twice to testify, at great expense to the parties. Exhibits would be introduced against the individual Defendants and then re-introduced against the City in the second trial. There would be two rounds of opening arguments and two rounds of closing arguments. Again, each trial would bring another round of motion practice. Courts have decided in these circumstances that bifurcation makes little sense. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007) (discussing precisely these sorts of problems with assuming that judicial economy is served by bifurcation); *see also Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants at the first trial, and much of the evidence relevant to the individual claims at the first trial must also be presented at the second trial. On the former point, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). On the latter point, *Monell* requires proof that a policy was the moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require lots of evidence about the underlying crime, investigation, and wrongful conviction. *See Houskins v. Sheahan,* 549 F.3d 480, 496 (7th Cir. 2008) (affirming a decision not to sever claims against two defendants because those claims

8

entailed "an overlap in the facts, evidence, and witnesses required").

Defendant's proposal would increase the burden on the Court and parties, it will multiply the costs of the litigation, and it will inconvenience many third-party witnesses. These burdens would be imposed without any offsetting benefit.

**B.      Defendant's Concerns About Burden Are Misplaced**

Defendant's concerns about the burden presented by the *Monell* claims are misplaced. First, many of them fall away once it is clear that the *Monell* claims will be tried no matter what, and so the choice is between trying them together with the other claims or trying them in the separate proceeding just described.

Second, the parade of horribles that the City trots out as supposed burdens are not as great as it claims. *Cadiz*, 2007 WL 4293976, at *3 (noting that if the additional burden of discovery on a *Monell* claim was sufficient to require bifurcation, "courts always would bifurcate Monell claims (but they do not do so)"). The City's judicial-economy argument is nothing more than an argument that *Monell* discovery is time consuming and expensive for it. Dckt. 44 at 9-12. The City refers to the *Rivera* litigation, and it complains that discovery was burdensome and trial was long, making the case expensive. But the expense of defending against weighty *Monell* theories—ones on which the City has twice been found liable the last two years for depriving young men of decades of their lives—is not a justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he plaintiff is the master of her complaint, and so the (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."). Moreover, properly analyzed, bifurcation will most likely *increase* the cost of prosecuting and defending the case as a whole. *Clipco v. Ignite Design*, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005) (bifurcation not appropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice").

9

Third, the City argues that eliminating the *Monell* claims will conserve judicial resources because adjudication of discovery, motions, and a trial of those claims will no longer be necessary. Dckt. 44 at 11-12. Not only is that flatly incorrect, for the reasons explained already, but it is also perverse to argue that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims. Particularly so when one considers that section 1983 is designed to ensure municipal accountability for violations of civil rights. *Owen v. City of Independence*, 445 U.S. 622 (1980).

Finally, the City overstates the burden of discovery necessary to try the *Monell* claims. Dckt. 44 at 9-11. Much of what the City will have to produce here—whether written policies, Rule 30(b)(6) testimony, employee records, a sample of files—has been produced already in other street files cases, including *Rivera* and *Fields*. *See Cadle*, 2015 WL 6742070, at *2 ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). There is no doubt materials from other cases can be used here. What the City fails to mention in complaining that Plaintiff has produced roughly 145,000 pages of documents related to *Monell* claims (Dckt. 44 at 9) is that the Plaintiff identified the exact set of *Monell* documents the Plaintiff's counsel and the City (through this same counsel) previously exchanged and litigated in *Rivera v. City of Chicago*, Case No. 12 C 4428 and has exchanged and addressed in other cases as well. None of those *Monell* documents are new. Moreover, contrary to the City's suggestion, Dckt. 44 at 11, the municipal policies at issue did not change between those the City was found liable for in *Rivera*—and *Fields*—and the time period relevant in this case. Similarly, the City is conducting discovery in multiple Guevara cases simultaneously—*Gomez*, 18 C 3335 (N.D. Ill), *Bouto v. Guevara*, No. 19 C 02441 (N.D. Ill.); *Reyes v. Guevara*, Nos. 18 C 1028 & 18 C 2312; *Sierra*, No. 18 C 3029 (N.D. Ill.); *Almodovar v. Guevara*, Nos. 18 C 2341 & 18 C 2701 (N.D. Ill.); and *Maysonet v. Guevara*,

10

No. 18 C 2342 (N.D. Ill.)—all of which concern similar *Monell* claims, which means that the City's burden of conducting this discovery will be divided among many cases. The City has not moved to bifurcate all of those cases, and as discussed its motions to bifurcate in *Gomez* and *Sierra* were denied. Moreover, there has been extensive discovery into Guevara already, and the parties' attorneys have discussed sharing that discovery in some cases and plan to do so in all cases, including this case. To the extent that there are concerns during litigation about the burdens of discovery beyond what the parties can agree upon, those issues can be resolved through the normal process imposed by the Federal Rules. *Carter*, 2011 WL 1466599, at *5.

### III. THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION

The City also argues that without bifurcation, the Defendants will be prejudiced at trial. Dckt. 44 at 14-15. This argument is without merit and provides no justification for bifurcation at this stage. The only potential prejudice here is to Rodriguez if the *Monell* claims are bifurcated. The argument that *Monell* evidence will prejudice the individual Defendants at trial should be rejected. As discussed already, a substantial portion of the *Monell* evidence will be directly relevant to Rodriguez's claims against the individuals, and it is therefore not unfairly prejudicial at all. Moreover, even if there was a concern about prejudice to the individual Defendants at trial, that would not justify bifurcation. Instead, limiting instructions are the established mechanism for managing prejudice. Fed. R. Evid. 105 (directing district courts to provide instructions to the jury "restrict[ing] the evidence to its proper scope"); *United States v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (*en banc*) (limiting instructions sufficient to manage any prejudice caused by the admission of other-acts evidence, and commenting that "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons."); *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018) (courts assume jurors follow limiting instructions); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to

11

avoid prejudice where it is presumed jury could follow limiting instruction on how to consider the evidence); *Awalt*, 2014 WL 1161500, at *13; *Gomez*, 2014 WL 4058963, at *12.

The City argues it will be unfairly prejudiced without bifurcation because it recently lost the trial in *Rivera*. Dckt. 44 at 14-15. Specifically, the City contends that it presented a hurried case in *Rivera* defending itself from *Monell* claims; that it faced lots of *Monell* evidence from the plaintiff; and it spent only 25 minutes on closing arguments (when in fact Defendants in *Rivera* had more than 2 hours to divide for closing arguments). As result, the City concludes, it lost the trial. *Id.* at 15. This argument is impossible to understand. First, the City lost the *Monell* claims in *Rivera* because the evidence that its policies and practices caused violations of Rivera's constitutional rights was overwhelming. Second, even supposing the City was correct in its characterization, this is not a justification for bifurcation at all. The City cannot seriously be suggesting that because it recently lost a trial (or did a poor job defending itself at trial) bifurcation is warranted the next time around. There is nothing *unfairly* prejudicial about losing a trial. This argument should be rejected, or at minimum addressed in advance of trial, not at the outset of discovery.

Finally, any prejudice avoided by bifurcation must be weighed against the prejudice to Rodriguez. *Houseman*, 171 F.3d at 1121. The only truly unfair prejudice here is that which Rodriguez would suffer if bifurcation was granted. First, because the "claims asserted by Plaintiff are interwoven . . . it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). Second, bifurcation would cause delays in the final resolution of Rodriguez's claims, and it would drive up the cost of the litigation. *Clipco*, 2005 WL 2861032, at *3 (bifurcation inappropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice"); *Terry*, 2010 WL 2720754, at *2 ("[J]udges in this district have echoed Plaintiff's concerns

12

about delay of the case and possible prejudice to Plaintiff from that delay."). Third, if the case was bifurcated, there would be numerous discovery disputes about what is "*Monell*-only" discovery and what discovery properly pertains to policies and practices that are relevant to Rodriguez's claims against the individual Defendants. *Ott*, 2010 WL 5095305, at *3 (denying bifurcation where it was "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"). This is precisely the case where bifurcation will "add unnecessary complexity and confusion to the discovery process" and where "discovery disputes are brewing." *Terry*, 2010 WL 2720754, at *3.

The risk of unfair prejudice to Defendants is extremely low, particularly at this stage of the case. On the other hand, the prejudice to Rodriguez from bifurcation is obvious and pronounced. In such a circumstance, the balance of equities favors a unitary proceeding.

## IV. BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT

The City's proposal would require two separate trials, in front of two separate juries, which would both consider the same issues. Most importantly, both juries would be required to consider whether and how Rodriguez's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated his right to due process, and the second to assess whether the City's policies were the moving force behind that same violation. The Seventh Amendment prohibits dividing issues in way that requires a second jury to reexamine an issue decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) (under the Seventh Amendment, "a given issue may not be tried by different, successive juries"); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues.

13

Thus, the Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first."); 9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016). Defendant's proposal violates the Seventh Amendment as well.

## V. THE CITY'S PROPOSED "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS PROCEDURALLY IMPROPER AND SHOULD BE IGNORED

In an attempt to avoid problems its proposed bifurcation creates, the City attaches what it calls a "Limited Consent to Entry of Judgment" to its motion, by which it states it would accept a judgment against it if the individual Defendants were found to have violated Rodriguez's constitutional rights but were also entitled to immunity. Dckt. 44 at 8 & Ex. A. As the Seventh Circuit has observed recently, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure, and it is therefore procedurally deficient. *Swanigan,* 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Rodriguez's demands. *Id.* It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Rodriguez rejects it. (That might be different if the City was proposing to stipulate that it had a policy and practice of suppressing exculpatory information in street files during the relevant time.) Finally, it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the Court should disregard the City's proposed consent entirely—it is not something that can be imposed on Plaintiff in order to remove the City from the case.

## VI. STRONG NON-ECONOMIC INTERESTS WEIGH AGAINST BIFURCATION

Finally, Rodriguez has an extremely strong non-economic interest in preventing future constitutional violations, particularly wrongful convictions. Defendant's arguments that "litigation of the *Monell* claim provides no monetary gain to Plaintiff," and that non-monetary reasons to pursue *Monell* claims "are not persuasive here," are shortsighted and self-serving. Dckt. 44 at 13-14. Deterrence of constitutional misconduct is a fundamental purpose of section 1983. *Owen*, 445 U.S. at 627 ("[Section 1983] was intended not only to provide compensation to victims of past abuses, but

14

to serve as a deterrent against future constitutional deprivations[.]"); *see also Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 727 (1999) ("There is no doubt that the cause of action created by § 1983 is, and was always regarded as, a tort claim . . . it is designed to provide compensation for injuries arising from the violation of legal duties and thereby, of course, to deter future violations."); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan*, 775 F.3d at 962; *Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) ("Deterrence of future misconduct is a proper object of our system of tort liability . . . . Depending on the size of the verdict and the size of the municipality . . . a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its polices and customs."). This case concerns a wrongful conviction caused by City policies that deprived countless men of fair trials and allowed dangerous officers like Guevara to terrorize the community with impunity. The stakes in a civil rights lawsuit will rarely be higher than they are here, and the *Monell* claims are of profound importance to future institutional reform. Courts have recognized that lawsuits like this "can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims." *Smith*, No. 16 C 3404, Dckt. 205, at 2. The strong non-economic objectives of Rodriguez's lawsuit also weigh against bifurcation.

## CONCLUSION

The City cannot avoid litigation over its role in the misconduct alleged. It is responsible, as much as the other Defendants, for Plaintiff's wrongful conviction and his decades of imprisonment. Plaintiff is entitled to discovery and a trial against the City. The City's motion should be denied.

/s/ Tara Thompson
**Counsel for Plaintiff**

Arthur Loevy
Jon Loevy
Russell Ainsworth
Tara Thompson
Loevy & Loevy
311 N. Aberdeen
Third Floor
Chicago, Illinois 60607

## CERTIFICATE OF SERVICE

    I, Tara Thompson, an attorney, hereby certify that on July 19, 2019, I filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE using the Court's CM/ECF system, which effected service on all counsel of record.

                                                       /s/ Tara Thompson