# Exhibit A

<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3     ARMANDO SERRANO,                )
                                       )
 4               Plaintiff,            )
           vs.                         )  No. 17 C 2869
 5                                     )
       REYNALDO GUEVARA, et al.,       )
 6                                     )
                 Defendants.           )
 7     ------------------------------- )
       JOSE MONTANEZ,                  )
 8                                     )
                 Plaintiff,            )
 9         vs.                         )  No. 17 C 4560
                                       )
10     REYNALDO GUEVARA, et al.,       )  March 19, 2019
                                       )  Chicago, Illinois
11               Defendants.           )  9:50 o'clock a.m.

12
                       TRANSCRIPT OF PROCEEDINGS
13             BEFORE THE HONORABLE MANISH S. SHAH

14
       APPEARANCES:
15
       For Plaintiff Montanez:  LOEVY & LOEVY
16                              BY:  MR. RUSSELL R. AINSWORTH
                                311 North Aberdeen Street, 3rd Floor
17                              Chicago, Illinois  60607
                                (312) 243-5900
18
       For Defendant Guevara:   LEINENWEBER BARONI & DAFFADA, L.L.C.
19                              BY:  MR. KEVIN E. ZIBOLSKI
                                120 North LaSalle Street, Suite 2000
20                              Chicago, Illinois  60602
                                (847) 251-4091
21
       For Defendants Mingey    THE SOTOS LAW FIRM, P.C.
22     and Halvorsen:           BY:  MR. JEFFREY R. KIVETZ
                                141 West Jackson Boulevard, Ste. 1240A
23                              Chicago, Illinois  60604
                                (630) 735-3118
24

25
</pre>

1    APPEARANCES (Continued):

2

3    For Defendant Coghlan:        JONES DAY
                                   BY:  MR. MORGAN R. HIRST
4                                  77 West Wacker Drive, Suite 3500
                                   Chicago, Illinois  60601-1692
5                                  (312) 782-3939

6    For Defendants Dillon         COOK COUNTY STATE'S ATTORNEY'S OFFICE
     and Cook County:              BY:  MS. YULIA NIKOLAEVSKAYA
7                                  50 West Washington Street, Suite 500
                                   Chicago, Illinois  60602
8                                  (312) 603-5440

9    For Defendant City:           ROCK FUSCO & CONNELLY, L.L.C.
                                   BY:  MS. EILEEN E. ROSEN
10                                 321 North Clark Street, Suite 2200
                                   Chicago, Illinois  60654
11                                 (312) 474-1000

12

13

14

15

16

17

18

19

20

21

22
                       COLLEEN M. CONWAY, CSR, RMR, CRR
23                          Official Court Reporter
                     219 South Dearborn Street, Room 1918
24                         Chicago, Illinois  60604
                              (312) 435-5594
25                      colleen_conway@ilnd.uscourts.gov

1      (Proceedings heard in open court:)

2           THE CLERK:  17 C 2869, Serrano versus Guevara; and 17

3    C 4560, Montanez versus Guevara.

4           MR. AINSWORTH:  Good morning, Your Honor.  Russell

5    Ainsworth appearing on behalf of plaintiff, Jose Montanez.

6           MS. ROSEN:  Good morning, Your Honor.  Eileen Rosen

7    on behalf of Defendant City of Chicago.

8           MS. NIKOLAEVSKAYA:  Judge, Assistant State's Attorney

9    Yulia Nikolaevskaya, N-i-k-o-l-a-e-v, as in Victor, s-k-a-y-a,

10   on behalf of Cook County and John Dillon.

11          MR. ZIBOLSKI:  Good morning, Judge.  Kevin Zibolski

12   on behalf of Defendant Guevara.

13          MR. KIVETZ:  Good morning, Your Honor.  Jeff Kivetz

14   on behalf of Defendants Mingey and Halvorsen.

15          MR. HIRST:  And good morning, Judge.  Morgan Hirst on

16   behalf of Matt Coghlan.

17          THE COURT:  We don't have Ms. Bonjean.  Do we have

18   anybody on behalf of Mr. Serrano?

19          MR. AINSWORTH:  If Ms. Bonjean hasn't made

20   arrangements to call in --

21          THE CLERK:  Bear with me for one second.

22          THE COURT:  Sure.

23      (Pause.  Court conferring with his clerk.)

24          THE COURT:  Let's take a minute and see if we can

25   track down Ms. Bonjean and get her on the phone.  We may need

1    your help to get a good phone number for her, though.

2              MR. AINSWORTH:  Thank you, Judge.

3              THE COURT:  So as soon as she is on the line, I'll

4    come back out here.

5              MS. ROSEN:  Thanks, Judge.

6         (Recess from 9:52 a.m. until 9:58 a.m.)

7              THE CLERK:  Recalling 17 C 2869, Serrano versus

8    Guevara; and 17 C 4560, Montanez versus Guevara.

9              THE COURT:  Okay.  Good morning, everyone.  We got

10   the appearances on the record that we were able to get earlier.

11             I can give you a ruling on the motion to bifurcate;

12   and after I do that, I'd like an update on what's been

13   happening.

14             I understand there were issues with the Rankins

15   deposition most recently.  We can talk about what else is

16   happening.  But let me give you the ruling on the motion to

17   bifurcate.

18             The City could have moved to bifurcate earlier.  The

19   City has at least told plaintiffs' counsel as early as March of

20   2018 that it intended to move to bifurcate, but the City didn't

21   make the motion until this year.  I have some guesses as to why

22   the City waited, but my preference would be that we resolve

23   these kinds of issues earlier in the case.

24             There is some value to waiting until now.  Because at

25   this point, discovery should be complete except for policy- or

1   practice-related discovery.  There are some items related to

2   the claims against the individual defendants that still need to

3   be completed.  But other than a rather vague statement in the

4   plaintiffs' brief that *Monell* overlaps with individual

5   defendant discovery, there is no concrete information offered

6   by plaintiffs to suggest to me that discovery against the

7   individual defendant officers is incomplete.

8       At this stage of the cases, there should be no

9   disputes about whether discovery is relevant to the individual

10  defendants' claims or *Monell* claims, and those kinds of fights

11  that sometimes come early in a case shouldn't be happening at

12  this point in the cases.

13       So I -- there have been some -- there is some value

14  to waiting until now to address the issue of whether *Monell*

15  should be bifurcated.  I still would prefer if the City were

16  consistent in its timing and approach to requesting

17  bifurcation, particularly in a case like these, in cases like

18  these where there are other plaintiffs in other cases with

19  overlapping defendants and overlapping theories.  If the City

20  were so concerned about costs, one would think it would attempt

21  early coordination across these different cases.

22       But plaintiffs have not been prejudiced by the City's

23  delay in seeking bifurcation.  I am persuaded that formal

24  requests targeting *Monell* theories have only recently been

25  propounded, and any sunk costs in developing *Monell* theories to

1    date don't change the calculus for me as to whether bifurcation

2    now could still expedite and economize these cases.

3          At a high level of generality, bifurcation is

4    disfavored, but if it can expedite and economize, it is an

5    available option, and I am persuaded that bifurcation will get

6    us to resolving these cases sooner.

7          I reject plaintiffs' premise that the *Monell* theories

8    will be tried no matter what happens with the individual

9    liability claims.  All of the constitutional violations alleged

10   require culpable conduct by one or more of the individual

11   defendants.  The only *Monell* theory that plaintiffs argue might

12   support municipal liability without individual liability is the

13   suppression of evidence kept in street files, but I don't agree

14   that that theory can be separated from individual liability.

15         Constitutional deprivation is the suppression of

16   exculpatory evidence that the individual defendants knew

17   existed.  If the individual defendants put exculpatory evidence

18   in a street file, but did nothing to disclose it to the

19   prosecutors, they violated *Brady*, even if the City's practice

20   of failing to disclose street files and the City's practice of

21   having insufficient or ineffective subpoena compliance also

22   caused the non-disclosure.

23         And all of the other theories, *Monell* theories raised

24   in the complaint would also require individual liability, and

25   the plaintiffs don't make any argument about any of the other

1   *Monell* theories, so I take that as, effectively, a concession

2   that all of the *Monell* theories would require individual

3   liability.

4           I don't ignore the City's offer of a consent judgment

5   against it.  That meaningfully changes the economic value of

6   the *Monell* claim, and that is a factor for me when considering

7   whether bifurcation can expedite and economize the cases.  If

8   plaintiffs win against one or more of the City defendants, the

9   plaintiffs will be compensated for their injuries.

10          Plaintiffs won't have a financial benefit from

11  pursuing *Monell* claims at that point.  So I expect if

12  plaintiffs win against an individual, it is not likely that the

13  time and expense of *Monell* discovery and a trial will be

14  something that anyone would want to bear.  It would not strike

15  me as a reasonable expenditure of attorney time and resources

16  under those circumstances.

17          If plaintiffs do not win against an individual City

18  defendant, that will be because of a finding that no

19  constitutional violation occurred.  It would not permit a

20  verdict against the City.

21          And this circles back to the -- the underlying

22  premise of all of this is that I don't agree that any of the

23  constitutional violations here could be committed without

24  culpability of one or more of the individual defendants.

25          And I don't see qualified immunity as being a likely

1   issue.  But I'll talk about qualified immunity in a minute.

2           There is no Seventh Amendment problem because a

3   *Monell* jury would not have to revisit whether there was or was

4   not a constitutional violation.  That will have been decided.

5   Plaintiffs will have a full opportunity to litigate that

6   question and have it decided by a jury.  A separate trial on

7   whether a municipal policy caused that violation would not

8   deprive plaintiffs of a jury trial.

9           So because I am operating on a different premise from

10  the plaintiffs, namely, I don't think litigating *Monell* is a

11  foregone conclusion, and I don't agree that *Monell* liability

12  can exist without individual liability, I balance the various

13  factors a little differently than the plaintiffs, and I

14  conclude that the cases as a whole can be expedited and

15  economized by bifurcation.

16          First, the existing *Monell* theories would require

17  time and expense that outweighs the benefits of pursuing

18  *Monell*.

19          I absolutely agree that the City should not be

20  skirting around a reckoning for its unconstitutional

21  practices -- I get that -- but this is not an injunctive relief

22  case, it's not a consent decree case.  The deterrence value and

23  the public virtue of individual plaintiffs pursuing *Monell*

24  cases over the practices in these particular cases is, in my

25  view, not enough to justify the time and expense of litigating

1    them when the City will make plaintiffs whole and accept a

2    judgment against it if their rights were violated.  This is a

3    civil damages lawsuit, and we should be trying to make

4    plaintiffs whole for the injuries they suffered as soon as we

5    can.

6              The noneconomic value of *Monell*, of the *Monell* claim,

7    is real.  The City does need to have a reckoning for its

8    practices.  And I think it's in the long-term public interest

9    for there to be a reconciliation between the police and the

10   policed, but I am not persuaded that these cases move toward

11   that interest in a cost-effective way.

12             Just because individual plaintiffs can resort to

13   Section 1983 and *Monell* liability doesn't mean that that theory

14   is always a good use of resources.  Rules 1 and 42 contemplate

15   that courts should try to bring costs and time down.  There is

16   much *Monell* discovery that remains to be done, from what I see

17   in the briefs, and it seems likely to be contentious and

18   time-consuming.

19             Plaintiffs haven't offered any concrete examples of

20   what they argue will be duplicative discovery.  There is an

21   argument that there will be two rounds of litigation and

22   discovery over the same issues, but I don't see it.  Everything

23   will happen once.  And bifurcation will allow us to resolve the

24   question of whether a constitutional violation occurred sooner.

25             The delay from adjudicating *Monell* is not prejudicial

1  or not sufficiently prejudicial to me because there is a strong

2  likelihood that adjudicating *Monell* won't be necessary at all.

3        Now, that said, I don't agree with the City that a

4  trial of *Monell* on the individual defendants would be unfairly

5  prejudicial to the defense.  That's not persuasive to me.

6  Trials can be managed in a way that avoids unfair prejudice.

7  But that doesn't mean that the balance of prejudice from

8  bifurcation harms the plaintiffs.  I do believe that a trial of

9  the individual defendants can be shorter than a trial that

10  included *Monell* theories, and I believe that resolving the

11  constitutional violation will result in plaintiffs being

12  compensated, if appropriate, and all of that inures to the

13  benefit of plaintiffs.

14        What plaintiffs lose from bifurcation is the

15  opportunity for the intangible victory, and I appreciate that,

16  but that doesn't strike me as cost-effective when the City has

17  agreed to pay if the Constitution was violated.

18        But let's talk about qualified immunity.  The

19  individual defendants have not waived qualified immunity, so I

20  can't say for certain that it's not an issue, but I believe we

21  can know whether qualified immunity is realistic before a trial

22  of the individual defendants.

23        If there are factual disputes precluding pretrial

24  resolution, I believe we can fashion a verdict form that gets

25  us a finding that will trigger the City's consent to a

1    judgment, thereby assuring that plaintiffs will be made whole

2    even in the unlikely event of a successful qualified immunity

3    defense.

4            But I may revisit that.  If the way the individual

5    defendants litigate this case makes me think that qualified

6    immunity is not amenable to resolution in a way that triggers

7    the City's offer of a consent judgment, if that happens, I will

8    undue the bifurcation and we'll do it all at the same time.  I

9    am just making a bet here that I don't think that that's going

10   to happen.  But if it does, then we'll -- then I'll undo the

11   bifurcation.

12           The motion to bifurcate is granted without prejudice

13   to revisiting bifurcation in advance of trial of the individual

14   defendants.

15           *Monell* discovery and merits litigation on the *Monell*

16   theories are stayed.

17           So where are things on the discovery front?  I know

18   that Judge Cox has supervision of it, but since you're all

19   here -- and I know there was an issue recently where you called

20   in because of the Rankins deposition.  So what's been

21   happening?

22           MS. ROSEN:  Judge, before we get to that, we had

23   filed a motion that's noticed for tomorrow.  Obviously, that's

24   now mooted by your ruling today.

25           THE COURT:  Yeah.  That motion is denied.

1    MS. ROSEN: Okay. Then if we can --

2    MR. AINSWORTH: So we have a fact discovery cutoff of

3    June 3rd. We all went to Memphis last week and we deposed

4    Timothy Rankins, and it went just fine. There were plenty of

5    chairs. We had an overabundance of chairs, in fact. And they

6    allowed the videographer in.

7         And so from plaintiffs' perspective, where we are is

8    we're on a sprint to June 3rd and we're going to get everything

9    done and get to trial as soon as possible and have a trial.

10    THE COURT: Anything -- any other updates from the

11    defense?

12    MS. ROSEN: No. I mean, I think that's where we all

13    are. There's, you know -- I don't know -- maybe a dozen or so

14    depositions and issues that we're still working through, but

15    everybody is working very hard to meet that June 3rd deadline

16    and --

17    MR. AINSWORTH: And we will meet it, Judge.

18         And I think it also appropriate for the Court to --

19    you know, in some of these cases, we spend an awful lot of

20    paper briefing summary judgment where there really aren't

21    summary judgment issues, or, you know, we all know that some of

22    the claims are absolutely going to go to trial, and Rule 50

23    exists, and perhaps the Court would entertain a conference for

24    the Court or some way to really assess out whether full-on, you

25    know, 60-page briefs from the parties on summary judgment to

1  just create a pile of paper for the Court to wade into is

2  really appropriate here.

3          THE COURT:  You're saying all the right things to

4  your audience about keeping the --

5          MR. AINSWORTH:  I mean, it's --

6          THE COURT:  -- volume down and all that --

7          MR. AINSWORTH:  We've seen this --

8          THE COURT:  -- and I --

9          MR. AINSWORTH:  -- over and over in these --

10          THE COURT:  -- appreciate it.

11          MR. AINSWORTH:  -- similar cases.

12          THE COURT:  I don't disagree with you.

13          MR. AINSWORTH:  Yeah.

14          THE COURT:  I was going to ask the defense:  Well,

15  what's your plan?  Are you going to -- are there individual

16  defendants that are going to articulate some theories?  Might

17  there be an opportunity for the parties to talk about what

18  theories do the plaintiffs really want to pursue at trial?  And

19  maybe winnow the case down in a way that would obviate the need

20  to litigate certain summary judgment questions.

21          So -- go ahead.

22          MR. HIRST:  Excuse me, Judge.  On behalf of Matt

23  Coghlan, the trial prosecutor -- Morgan Hirst -- we will almost

24  undoubtedly file a summary judgment motion.

25          We're happy to talk with Mr. Ainsworth and Ms.

1   Bonjean in advance to resolve those issues.  I have some belief

2   as to how that will go, but I'm happy to have that conversation

3   and work through it.  But I'm confident we will end up filing

4   something.  I don't want to speak on behalf of anybody else.

5          And I'm confident as well we will try and keep the

6   pages down as much as possible as well.  We want you to be able

7   to read it and see the issues we will highlight and don't want

8   to have to unnecessarily wade into unnecessary pages as well,

9   so --

10         MR. KIVETZ:  And we would agree with Mr. Hirst's

11  sentiment.  So, you know, we would certainly be open to

12  speaking to Mr. Ainsworth and Ms. Bonjean, but we inevitably

13  will likely be filing a summary judgment motion as well.

14         MR. AINSWORTH:  It's just that in this case, we've

15  got a defendant on the 5th, we've got the main witness -- the

16  only witness at trial to implicate plaintiffs has said, you

17  know, it was a -- "It was an entire lie, and I was put up to it

18  by the defendants."  And so it's a kind of case where, you

19  know, we will discuss, but I welcome the Court to set some kind

20  of framework where we might be able to have a more formal

21  discussion with the Court about the merits of engaging in this.

22         THE COURT:  I think there might be some benefit to

23  everybody if we were to talk about what summary judgment

24  theories the individual defendants are planning on offering

25  before you've put -- you finalize pen to paper and the briefs

1  have been filed and the 56.1 statement has been amassed.

2  Before you do that, let's talk about what you really

3  intend to do, and I may be able to give you some guidance in a

4  way that preserves arguments for you without having to do the

5  briefing.  And that may be an option, or I may end up saying

6  I'm going to need to read at least some briefs on this.  But

7  it's an absolutely fair point, and I am certainly open to it.

8  Why don't we set some time in that second week of

9  June, once you're done and you've had a couple of days to think

10  about everything that you've done over the course of discovery,

11  and we can talk about what your plans are.  And let's do it at

12  a little bit of an off-time.

13  THE CLERK:  Sure.  Everyone, how about Tuesday, June

14  11th --

15  MS. ROSEN:  I --

16  THE CLERK:  Go ahead.

17  MS. ROSEN:  Sorry.  If we could do it later in the

18  week?  I'll be just coming back from out of the country, so I

19  can do later in the week.

20  THE CLERK:  Sure.  How about Thursday, the 13th at --

21  we could do 10:30.

22  MR. AINSWORTH:  Whenever the Court's available.

23  MR. HIRST:  That's fine with us.

24  MS. NIKOLAEVSKAYA:  Good for the County.

25  THE COURT:  Okay.  Is there anything else we should

1  cover this morning?

2  MS. ROSEN:  No, not from the Defendant City.

3  MR. HIRST:  And, Judge, just so we're clear on that

4  conference, because I don't want to overdo it, you just want to

5  have a conversation?  You don't want us to do filings in

6  advance or submissions or anything like that?  Just to be

7  prepared to talk and go through the issues?

8  THE COURT:  Correct.

9  MR. AINSWORTH:  And we should meet and confer in

10  advance of that conference.

11  THE COURT:  Yes.

12  MR. AINSWORTH:  Okay.

13  THE COURT:  Go ahead and give the plaintiffs a

14  preview of what you're planning on raising by way of summary

15  judgment and then both sides can talk to me about it and I can

16  tell you what I think.

17  MR. HIRST:  Very good.

18  MR. AINSWORTH:  And we're going to go see Judge Cox

19  now.

20  THE COURT:  Okay.  Thank you.

21  MR. AINSWORTH:  And --

22  MS. ROSEN:  Thank you, Judge.

23  MR. AINSWORTH:  And just to let you know regarding

24  Ms. Bonjean.  When we agreed to move the status, she believed

25  that her trial, which is starting today, was going to be

1    continued because the defense counsel had a conflict in that

2    case.  The judge denied the motion to continue, and here we

3    are.  So apologies to the Court.

4              THE COURT:  That's fine.  And my apologies to Ms.

5    Bonjean that we couldn't make arrangements for her to be here.

6              MR. AINSWORTH:  All right.  Thank you.

7              MS. ROSEN:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              MR. ZIBOLSKI:  Thank you.

10             MR. HIRST:  Thank you.

11             MR. KIVETZ:  Thank you.

12        (Proceedings concluded.)

1          C E R T I F I C A T E

2

3

4

5                  I, Colleen M. Conway, do hereby certify that the

6     foregoing is a complete, true, and accurate transcript of the

7     proceedings had in the above-entitled case before the

8     HONORABLE MANISH S. SHAH, one of the Judges of said Court, at

9     Chicago, Illinois, on March 19, 2019.

10

11

12          */s/ Colleen M. Conway, CSR, RMR, CRR*          *03/19/19*

13                  Official Court Reporter                    Date
                United States District Court
14              Northern District of Illinois
                     Eastern Division

15

16

17

18

19

20

21

22

23

24

25