# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICARDO RODRIGUEZ,

Plaintiff,

v.

THE CITY OF CHICAGO, et al.,

Defendants.

Case No. 18-cv-7951

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Judge Cox's Order denying the Defendant City of Chicago (the "City")'s motion to bifurcate *Monell* claims without prejudice [51] is AFFIRMED, and the City's Rule 72(a) objection [54] is OVERRULED.

## BACKGROUND

This case arises from Plaintiff Ricardo Rodriguez' arrest and conviction for the murder of Rodney Kemppainen and attempted murder of Rudolfo Zaragoza on December 16, 1995. After spending over 22 years in prison, Plaintiff's conviction was vacated in March 27, 2018. (Dkt. 11 at ¶50). Plaintiff brings this action pursuant to 42 U.S.C. § 1983, claiming that several Chicago Police Officers (the "Individual Defendants") framed him for murder and attempted murder in 1995. Plaintiff alleges that the Individual Defendants fabricated purported eyewitness testimony and suppressed exculpatory evidence in order to secure Plaintiff's arrest and conviction. (*Id*. at ¶¶24–25, 34–40, 47). Plaintiff also alleges that the City failed to train, supervise, and discipline its officers, and had a practice of suppressing

important investigatory materials in clandestine files ("street files") which were maintained solely at the police department but never disclosed to state prosecutors or criminal defendants. (*Id*. at ¶¶55–72). On September 11, 2019, Judge Cox denied the City's motion to bifurcate Plaintiff's *Monell* claims for the purpose of discovery and trial. (Dkt. 51). Before the Court is the City's Rule 72(a) objection to the magistrate judge's order denying bifurcation.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure 72(a) governs the district court's review of nondispositive magistrate judge decisions. Rule 72(a) provides: "The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943–44 (7th Cir. 1997); *see also McGuire v. Carrier Corp.,* No. 1:09-CV-315-WTL-JMS, 2010 WL 231099, at *1 (S.D. Ind. Jan. 13, 2010) ("This is an extremely deferential standard and the district court may not reverse the magistrate judge's decision simply because the district court judge would have come to a different conclusion."); *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) ("We will not reverse a determination for clear error unless it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish."). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Baker*

*v. McCorkle*, No. 116CV03026JMSMPB, 2018 WL 3439078, at *3 (S.D. Ind. July 17, 2018) (citations omitted). To prevail in its objections, the City must demonstrate that Judge Cox's order was clearly erroneous or contrary to law. *See Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-CV-779, 2017 WL 446043, at *2 (N.D. Ill. Feb. 2, 2017).

Rule 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Seventh Circuit has emphasized that only one of the above criteria, prejudice or judicial economy, needs to be satisfied for a court to grant bifurcation "as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). The district court has considerable discretion in deciding whether to bifurcate claims. *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013); *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). In this district, there is a growing body of precedent for both granting and denying bifurcation of *Monell* claims in §1983 cases. *Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *1 (N.D. Ill. Dec. 6, 2013). "[T]he decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent upon costs and benefits of bifurcation under the unique circumstances of each case." *Awalt v. Marketti,* 2012 WL 11615000, at *10 (N.D. Ill. April 9, 2012).

**ANALYSIS**

## A. Prejudice to Plaintiff

The City asserts that the magistrate judge committed clear error by finding that Plaintiff would suffer prejudice from bifurcation. The City argues that the Judge Cox failed to consider its arguments that Plaintiff is not entitled to any additional compensatory damages if there is a finding of liability against Defendant and is only entitled to monetary damages by law. (Dkt. 54 at 4). But the magistrate judge did consider these arguments and noted that she was not persuaded by them because Plaintiff has more than monetary interests in this case. The magistrate judge explained that Plaintiff "'has a profound interest in pursuing his claims with an eye towards institutional reform,' and 'a judgment naming the City itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the City.'" (Dkt. 51 at 4) (*quoting Gomez v. Guevara*, 18-cv-3335, Dkt. 65 at 10 (N.D. Ill. Apr. 8, 2019)).

Numerous courts have recognized the importance of weighing such non-monetary considerations in the bifurcation analysis. *See e.g., Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017) ("In sum, Plaintiff has other important objectives—most notably, deterrence and reform— that would be furthered by a judgment holding the City liable for the Defendant Officers' alleged misconduct."); *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *10 (N.D. Ill. Sept. 2, 2015) ("A judgment against a municipality can be a catalyst for change, because it not only holds that entity responsible for its actions and inactions, but also can encourage

the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue."); *Giles*, 2013 WL 6512683, at *3 ("mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs").

Next the City argues that Plaintiff will suffer no prejudice from bifurcation because "the City has already agreed to a judgment against it if Plaintiff proves any one of the individual officers violated his constitutional rights (whether there is a successful qualified immunity defense or not)." (Dkt. 54 at 4). Although some courts in this district have found that the City's willingness to consent to a judgment against it for compensatory damages serves as an adequate deterrent, *see Ezell v. City of Chicago*, No. 18 C 1049, 2019 WL 3776616, at *6 (N.D. Ill. Aug. 12, 2019); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1083–84 (N.D. Ill. 2018), others have found "such stipulations insufficient to justify bifurcation, noting that the plaintiff is entitled to be the master of her own complaint and pursue claims even if they have a minimal pecuniary reward." *Rodriguez v. City of Chicago*, No. 17 CV 7248, 2018 WL 3474538, at *3 (N.D. Ill. July 19, 2018) (citing *McIntosh*, 2015 WL 5164080, at *9; *Warren v. Dart*, No. 09 CV 3512, 2012 WL 1866372, at *2 (N.D. Ill. May 22, 2012)).

Courts have reasoned that there are valid non-economic reasons for pursuing a *Monell* action "even if she has already won a judgment against individual officers and the municipality has consented to judgment." *Loury*, 2017 WL 1425594, at *5;

*King v. Evans*, No. 13-CV-1937, 2015 WL 4397761, at \*2 (N.D. Ill. July 17, 2015) (noting that even if the City "is willing to stipulate to judgment in the event Plaintiff succeeds on her claims against the individual officer[s]," there are legitimate non-monetary benefits to pursuing a *Monell* claim, such as deterring future official misconduct). Further, courts in this district have taken issue with similar consents as offering little, if any, deterrent effect where, as here, the proposed consent expressly denies any wrongdoing on the part of the City. *See* (Dkt. 54-3, ¶¶3–4); *Rodriguez*, 2018 WL 3474538, at \*3 ("A proposed consent judgment is particularly ill-designed to have any deterrent effect where, as here, it expressly denies any wrongdoing on the City's part."); *Loury*, 2017 WL 1425594, at \*5 (noting same); *Giles*, 2013 WL 6512683, at \*3.

Similarly unavailing are the City's arguments that the magistrate judge erred because "the policies at issue are 25 years old, so any effect a judgment on those policies may have on institutional reform are moot," and "Plaintiff is not requesting a consent decree or equitable relief where the City would be forced into reform" so his argument is pretextual." (Dkt. 54 at 4–5). As noted earlier, Plaintiff is the master of his own complaint, and failure to pursue a consent decree or injunctive relief in this case does not foreclose the possibility that he still has significant non-monetary incentives for pursuing a *Monell* claim. Also, even though the policies at issue are 25 years old, the City has not demonstrated that all of the policies at issue have been meaningfully reformed such that a finding of *Monell* liability in this case would have no impact on institutional reform or deterrence.

Accordingly, there is no clear error in the magistrate judge's finding that Plaintiff's "profound" non-economic incentives for pursing his *Monell* claim weigh in favor of denying bifurcation.

**B. Burden of Unitary Discovery on the City**

The magistrate judge's finding that prejudice to the Plaintiff outweighed any burden of responding to *Monell* related discovery requests is also not clearly erroneous. The City contests the magistrate judge's assertion that "much of the discovery on *Monell* liability has already been done by the City at least once, and it will not need to expend significant time or resources to complete it." (Dkt. 51 at 3). Judge Cox explained:

> This is not the first case in which this discovery has been produced. As noted, it is one of several cases alleging the same pattern and practice of fabricating incriminating evidence and hiding exonerating evidence against a similar group of Chicago Police Officers that is currently being litigated in several courts in the Northern District of Illinois. At least one of these cases, *Rivera*, has already been tried to a jury, and gone through *Monell* discovery. (Dkt. 51 at 3).

The Court does not find clear error in the Judge Cox's reasoning. As Plaintiff points out, much *Monell* discovery including written policies and training manuals, Rule 30(b)(6) testimony, employee records, and samples of homicide and or CR files have or will be produced in other cases involving a similar group of Chicago Police Officers including *Rivera v. Chicago*, No. 12c4428 (N.D. Ill); *Fields v. Chicago*, No. 10c1168 (N.D. Ill.); *Ryes v. Guevara, et al*, No. 18c1028 (N.D. Ill); *Gomez*, No. 18c335 (N.D. Ill); *Reyes & Solache v. Guevara*, Nos. 18 18c1028 & 18c2312 (N.D. Ill.); *Almodovar v. Guevara*, Nos. 18c2341 & 18c2701 (N.D. Ill); *Sierra v. Guevara*, No.

18c3029 (N.D. Ill.); *Maysonet v. Guevara*, No. 18c2342 (N.D.Ill). (Dkt. 61 at 11–12).

Other courts have reached similar conclusions. *See e.g.*, *Cadle v. City of Chicago*,

No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("The City is very

familiar with this type of discovery, and the Court has no doubt that the City has

produced similar information in other cases. The incremental burden of doing so

again here does not militate heavily in favor of bifurcation.").

The City notes that Plaintiff will likely ask for homicide files for 6 years, from

1992 to 1997, that were not produced in *Rivera*, and this production "will be a huge

undertaking." (Dkt. 54 at 7). Plaintiff responds that "[s]imilar homicide files and CR

files from the 1992–1995 time period will almost certainly be produced in multiple

pending Guevara cases in which bifurcation was also denied, such as *Sierra* and

*Gomez*, which address investigations of 1995 and 1997 homicides, respectively."

(Dkt. 61 at 9). While it is true that unitary discovery will inevitably impose some

burden on the City in responding to *Monell* related discovery requests, the City's

assertion that it will need to produce "thousands of pages of documents" and

"undergo years of discovery to analyze those documents," (Dkt. 65 at 1), is

speculative at best.  Many courts have not been persuaded by a defendant's general

assertions about the high costs of *Monell* discovery. *See e.g.*, *Cadiz v. Kruger*, No. 06

C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007) ("The City says it would

have to produce 'thousands of documents' . . .  but that sort of non-specific assertion

of burden is routinely rejected as a basis to deny or limit discovery under

Fed.R.Civ.P. 26(b)(2)(C)(iii). Such a vague assertion fares no better when a party

resorts to it in support of bifurcating a Monell claim." . . .") (citations omitted);

*Rodriguez*, 2018 WL 3474538, at *3 (denying bifurcation of *Monell* discovery noting

that the assertions of the high costs of *Monell* discovery is speculative and "broader

scope" does not necessarily translate to an "undue burden"). Further, to the extent

that the City finds Plaintiff's *Monell* discovery requests overly broad or unduly

burdensome, "the parties can seek assistance from the Court to tailor the requests

as necessary after making independent good faith attempts to do so." *McIntosh*,

2015 WL 5164080, at *8–9. The Court finds no clear error in Judge Cox's finding

regarding the burden of discovery to the City.

**C. Prejudice to the City at Trial**

Likewise, the City has not shown clear error in the magistrate judge's

analysis of prejudice to Defendants at trial. Judge Cox acknowledged that "trying

the *Monell* claims and individual claims might potentially prejudice the City by

confusing the jury or causing the jury to punish the City for any findings it makes

against the Individual Defendants." (Dkt. 51 at 3). Nonetheless, she concluded that

"[a]ny prejudice to the City that comes from trying the case jointly is outweighed by

the prejudice to Plaintiff, and also because any prejudice can be cured either

through limiting instructions during the trial or by bifurcating the case for trial at a

later date." (Dkt. 51 at 3). Other courts in this district have taken a similar

approach. *See e.g.*, *Giles*, 2013 WL 6512683, at *2 (denying bifurcation because "any

potential prejudice that might arise from a unitary trial can be mitigated through

the use of limiting instructions, motions in limine, and the Rules of Evidence");

*Rodriguez*, 2018 WL 3474538, at \*4 (same); *Loury*, 2017 WL 1425594, at \*4 (same).

Courts have noted that determining prejudice to defendants at trial is often

"premature and too speculative" at the early stages of litigation. *McIntosh*, 2015 WL

5164080, at \*9; *Love v. City of Chicago*, 363 F. Supp. 3d 867, 875 (N.D. Ill. 2019);

*Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 8199322, at \*3 (N.D. Ill. Dec.

12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and

*Monell* claims together] is shortly before trial, when the court (and the parties) will

have a much better understanding of the evidence and its relevance to the

individual and *Monell* claims.").

**D. Judicial Economy**

Judge Cox noted that bifurcation would not serve the interests of judicial

economy because (1) bifurcated discovery could result in costly and burdensome

discovery disputes; and (2) "[h]olding two trials, several years apart, and two

distinct and consecutive rounds of discovery would not lessen the time this case took

to resolve or the burden on the Court." (Dkt. 51 at 3–4, fn. 1).

The City first takes issue with the magistrate judge's assertion that

bifurcated discovery could result in discovery disputes stating, "[u]ndersigned

counsel is unaware of any case where the parties needed to seek court intervention

regarding what was *Monell* v. *non-Monell* discovery." (Dkt. 54 at 7). But the

magistrate judge's observations are amply supported by case law. *See e.g., Loury*,

2017 WL 1425594, at \*3–4 ("Given the factual overlap between the *Monell* claims

and the constitutional claims, a stay of *Monell* discovery will likely result in

continual discovery disputes between the parties about whether Plaintiff's discovery

requests invoke her *Monell* claim or her other claims. As several courts in this

district have noted, forcing a court to resolve constant disputes about discovery

requests' connection to *Monell* liability can introduce additional confusion to a

matter and make litigation less efficient."); *Cadle*, 2015 WL 6742070, at *2 (denying

bifurcation noting "[a] stay of *Monell* discovery could, and often does, give rise to

arguments about whether Plaintiffs discovery requests relate to his *Monell* claim or

to his other claims."); *Rodriguez*, 2018 WL 3474538, at *3 (noting same). These

parties, very sophisticated in this type of litigation, may be able to keep *Monell*

discovery separate from non-*Monell* discovery for the most part. But that is not a

basis to find that Judge Cox committed clear error.

Next, the City argues that the magistrate judge erred by noting that

bifurcation could result in two distinct rounds of discovery and two trials several

years apart. The Court finds that the magistrate judge's reasoning is not clearly

erroneous or contrary to law.  As Plaintiff points out, if he prevails against the

individual defendants on his constitutional claims, his *Monell* claim would still have

non-economic value and establish an independent basis for liability. Courts in this

district have cautioned against bifurcating a *Monell* claim where, as here, the

proposed consent to compensatory damages explicitly denies liability on the part of

the City, noting that such a consent "attempts to circumvent the public policy goals

of *Monell* claims by insulating the City from litigation and accepting responsibility

if their practices and policies result in constitutional injuries." *Giles*, 2013 WL 6512683, at \*3; *see also Rodriguez*, 2018 WL 3474538, at \*3.

Similarly, the Court is not persuaded by the City's assertion that the magistrate judge's finding of the possible need for two separate trials is "contrary to law." The City argues that there is no possibility of a second trial if the Individual Defendants are not found liable because "the Supreme Court and Seventh Circuit have consistently held, there can be no *Monell* liability without a finding of a constitutional violation by at least one individual defendant officer, especially in a case such as the present one." (Dkt. 54 at 7–8). However, in *Thomas*, the Seventh Circuit held that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2009). Plaintiff argues that the *Thomas* exception applies in this case because his complaint specifically pleads that "police officers placed 'discoverable reports, memos and other information in files that were maintained solely at the police department' and that pursuant to the City custom and practice, such files were withheld from prosecutors and criminal defendants." (Dkt. 61 at 13, fn 4) (citing Dkt. 1 at ¶¶ 58–60). Plaintiff explains that "a *Monell* verdict reflecting that the City's file-keeping system prevented disclosure of exculpatory investigative materials to Plaintiff would be consistent with a verdict that no individual Defendant bore personal responsibility for evidence suppression." (Dt. 61 at 13).

Courts in this district have recognized that under similar facts, *Monell* liability against the City would not necessarily be dependent on a finding of liability of the individual officers. For instance, in *Gomez*, the court denied bifurcation on the grounds that it would not promote judicial economy noting:

> [W]ith respect to the evidence suppression allegations, the jury could presumably find that the Defendant Officers put the evidence in its proper place within the Chicago Police Department files, but that the City had no mechanism for guaranteeing that those files were turned over in the litigation process. This finding would not be contingent on the jury determining that the individual officers intentionally suppressed evidence. . . . Therefore, Gomez's asserted *Monell* claim could still proceed independent of the Defendant Officers individual liability. Accordingly, bifurcation would not serve the interests of judicial economy on this ground . . .

*Gomez v. Guevara et al.*, No. 18c3335, Dkt. 65 at 6 (N.D. Ill. April 8, 2019); *see also Cage v. City of Chicago*, No. 9 C 3078, 2010 WL 3613981, at *2 (N.D. Ill. Sept. 8, 2010) ("[I]f Cage can establish it was the policy of the Chicago Police Department crime lab to withhold exculpatory evidence, a verdict could exist against the municipality but in favor of the individual defendants."). Further, the magistrate judge denied the motion without prejudice to revisit closer to trial if the City chooses to refile. In similar cases, courts have found it premature at the early stages of litigation to rule on whether the *Monell* liability is dependent on individual liability. *See e.g.*, *Reyes v. Guevara et al, No. 18c1028, (N.D. Ill);* Trans. of April 24, 2019 Hearing,(Attached to Pl.'s Response, Dkt. 61-7 at 4) ("[A]t this point I can't make a determination that the *Monell* liability is necessarily dependent on the individual liability. I think there are theories that would not make that the case. . .

[and] there should be an opportunity to suss that out . . ."); *McIntosh v. City of Chicago*, No. 17 C 6357 (Dkt. 102 at 17–19) (N.D. Ill.); *Sierra v. Guevara et al.*, No. 18c3029 (Dkt. 88 at 6) (N.D. Ill.) (denying motion for bifurcation without prejudice). Accordingly, the Court finds that the magistrate judge's reasoning regarding judicial economy is not clearly erroneous or contrary to law.

## CONCLUSION

For the reasons set forth above, Judge Cox's Order denying the City's motion to bifurcate *Monell* claims without prejudice [51] is AFFIRMED, and the City's Rule 72(a) objection [54] is OVERRULED.

E N T E R:

Dated: December 17, 2019

_____
MARY M. ROWLAND
United States District Judge