```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

RICARDO RODRIGUEZ,                )  No. 18 C 7951
                                  )
              Plaintiff,          )
                                  )
         vs.                      )  Chicago, Illinois
                                  )
CHICAGO POLICE OFFICERS REYNALDO  )
GUEVARA, ERNEST HALVORSEN, RICHARD)
CURLEY, ROBERT BIEBEL, ED MINGEY, )
LEE EPPLEN, M. SANDERS, J. MOHAN, )
and UNKNOWN OFFICERS, and the CITY)
OF CHICAGO,                       )
                                  )  January 28, 2020
              Defendants.         )  10:13 a.m.

                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HON. SUSAN E. COX, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:       MS. TARA E. THOMPSON
                         Loevy & Loevy,
                         311 North Aberdeen Street, 3rd Floor,
                         Chicago, Illinois   60607

For Defendant
Reynaldo Guevara:        MR. THOMAS M. LEINENWEBER.
                         Leinenweber, Baroni & Daffada, LLC,
                         120 North LaSalle Street, Suite 2000,
                         Chicago, Illinois   60602

For all Individual
Defendants:              MR. JOSH M. ENGQUIST
                         The Sotos Law Firm, P.C.,
                         141 West Jackson Boulevard, Suite 1240A,
                         Chicago, Illinois   60604

For Defendant
City of Chicago:         MS. EILEEN E. ROSEN
                         Rock, Fusco & Connelly, LLC,
                         321 North Clark Street, Suite 2200,
                         Chicago, Illinois   60654


               Patrick J. Mullen, Official Court Reporter
                219 South Dearborn Street, Room 1412,
                       Chicago, Illinois   60604
```

1    THE CLERK:  18 CV 7951, Rodriguez versus Guevara.

2    THE COURT:  Good morning.

3    MS. THOMPSON:  Good morning.

4    MS. ROSEN:  Good morning, Judge.  Eileen Rosen on
5 behalf of defendant City of Chicago.

6    MS. THOMPSON:  Tara Thompson on behalf of plaintiff,
7 Your Honor.

8    THE COURT:  Good morning.

9    MR. ENGQUIST:  Good morning, Your Honor.  Josh
10 Engquist on behalf of the individual defendants with the
11 exception of Mr. Guevara.

12    MS. LEINENWEBER:  Good morning, Judge.  Tom
13 Leinenweber for defendant Reynaldo Guevara.

14    THE COURT:  Okay.  I have a motion to compel by the
15 defendants, and then I saw that against my standing order and
16 my rules there was a response.  So I'm striking the response.
17 Okay?  I mean, I don't see why this is so difficult.  When you
18 come before me, I go over the rules because I know lawyers for
19 whatever reason, even good lawyers, don't read standing orders.
20 But yet today no less than three people have filed a response
21 when I say I don't want one.  Okay?

22    So why don't you tell me, you guys, what is still
23 outstanding on your discovery requests.

24    MR. ENGQUIST:  It's also pertaining to -- I'll just
25 give you kind of a --

Case: 1:18-cv-07951 Document #: 83 Filed: 03/13/20 Page 3 of 18 PageID #:777

3

1  THE COURT: Yes, give me the overview.

2  MR. ENGQUIST: When we were last here, it was
3  discussed. Plaintiff's counsel at that point, Russell,
4  Mr. Ainsworth, you know, gave his mea culpa and said that the
5  discovery would be to us by the Friday that had been delayed
6  since November.

7  THE COURT: Right, right.

8  MR. ENGQUIST: Friday came and went. On Monday, we
9  were having a conversation with plaintiff's counsel, and we
10 reminded them, well, where's the discovery. Once again, there
11 was a mea culpa and we'd get it by Wednesday. When it didn't
12 come in, we filed a motion to compel.

13 On Sunday late afternoon, we did receive responses to
14 our written discovery. We're still missing some documentation
15 which they said they will be sending us. We wanted to make
16 sure that we keep that kind of in line to get it back since
17 we've had so many delays.

18 Another issue that did pop up is that it appears that
19 since August plaintiff has had a pending warrant for aggravated
20 kidnapping.

21 THE COURT: Yes.

22 MR. ENGQUIST: Apparently he's not in the state, and
23 that does cause some concern from the defense side. That seems
24 to have been the reason for the delay. We've been told over
25 and over again he was visiting a sick relative, which he may

1  very well be in California, but that seemed to be the issue
2  with the delay when it comes through.
3      Additionally, we were about to embark on a bunch of
4  very expensive discovery.
5      THE COURT: Right.
6      MR. ENGQUIST: If he can't participate in person when
7  we want his deposition or for other things and it causes
8  delays, that causes us some concern if we're going to be
9  putting forth that kind of effort.
10     THE COURT: Okay. You say he seems to have an
11 outstanding warrant. Does he or doesn't he?
12     MR. ENGQUIST: He does.
13     MS. ROSEN: He does.
14     THE COURT: He does.
15     MR. ENGQUIST: He does.
16     THE COURT: So that's a matter of fact.
17     MR. ENGQUIST: The last I checked. I did not check
18 yesterday, but the day before I checked and it was still
19 outstanding.
20     THE COURT: All right. Can you address that point
21 first, please?
22     MS. THOMPSON: I mean, I agree that it seems he has an
23 outstanding warrant.
24     THE COURT: Yes.
25     MS. THOMPSON: I'm not disputing that that's the state

1 of affairs.

2 THE COURT: Okay.

3 MS. THOMPSON: And I would expect that that issue is
4 going to resolve itself shortly. I mean --

5 THE COURT: How? Is he going to turn himself in? Is
6 he going to come back and be arrested? I mean, how is it going
7 to resolve?

8 MS. THOMPSON: I mean, I'll say honestly, Your Honor,
9 that as far as where -- there was one occasion on which we
10 represented to the defendants that Mr. Rodriguez was caring for
11 his grandparents in California.

12 THE COURT: Yes.

13 MS. THOMPSON: That was true on one occasion. I don't
14 know what I can say about the outstanding warrant currently
15 because of attorney-client issues, but obviously I'm an officer
16 of the court. I have obligations to the Court in terms of how
17 I would advise the client about that.

18 THE COURT: Right.

19 MS. THOMPSON: I'm an officer of the court, and I've
20 done what I believe is ethically appropriate. But I'm not
21 expecting that Mr. Rodriguez is going to abscond from this
22 litigation. It's his goal to receive justice in this
23 litigation.

24 The discovery delay here, obviously plaintiff doesn't
25 offer a defense for that. We've complied. We can talk to the

1 Court about what we're doing, but I don't expect that this
2 warrant is going to prevent Mr. Rodriguez from continuing to
3 pursue this litigation going forward.
4     THE COURT: Well, it might not prevent his ability to
5 pursue the litigation, but it may well prevent his ability to
6 be present at depositions. I just don't know. All right?
7     MS. THOMPSON: He has to be present at his deposition.
8 Obviously if we don't offer him, that would be a problem for
9 this litigation, and it's our intention to do that. I mean, I
10 will just say, too, that hasn't been noticed. We've noticed
11 every --
12     THE COURT: No, I'm talking not only about his
13 deposition but also depositions, if he wants to be present at
14 the depositions of other parties, as the plaintiff is entitled
15 to do. So it could impact that as well. Do we have any sense
16 of when and if this --
17     MS. THOMPSON: Judge --
18     THE COURT: You're completely in the dark other than
19 the warrant.
20     MS. ROSEN: Yeah. I mean, we have the warrant. I've
21 started to gather some records.
22     THE COURT: Yes.
23     MS. ROSEN: You know, plaintiff's counsel actually
24 requested them, but quite frankly as the city's counsel I'm
25 uncomfortable providing criminal police reports to a person who

1 has left the jurisdiction. I mean, it seems like if he wants
2 to see what the charges are against him, he should appear and
3 get those records. He shouldn't use civil discovery as a
4 mechanism to get in front of his criminal case.
5     THE COURT: Right. No, I agree with that.
6     MS. ROSEN: So, I mean, I'm just concerned, you know.
7 Certainly if plaintiff's counsel were saying, you know, there's
8 a plan in place and he'll be turning himself in --
9     THE COURT: Well, there may be. As she points out,
10 she doesn't want to say anything further because of her
11 relationship with her client, her attorney-client relationship.
12     MS. ROSEN: Well, okay, but I mean --
13     THE COURT: Well, let's deal with what we can deal
14 with first. Okay?
15     MS. ROSEN: Okay.
16     THE COURT: In the interest of just kind of trying to
17 move what part of the case we can move along, when will the
18 defendants have a complete discovery response?
19     MS. THOMPSON: I believe there's only truly one thing
20 really outstanding.
21     THE COURT: Okay.
22     MS. THOMPSON: I mean, there are a couple written
23 documents that we said we would provide. One category we've
24 already provided. There's a second issue just related to
25 ongoing Monell discovery, and as the Court is aware there's a

1  number of different pieces of litigation that really involve
2  all the same 404(b) evidence.
3       THE COURT: Yes, which is why you should have all this
4  stuff ready because it's been -- there are many cases pending,
5  right?
6       MS. THOMPSON: Well, this week plaintiff did make a
7  further disclosure of names related to 404(b) evidence across
8  these cases, and my understanding is that our colleague who's
9  working on others of these cases has been in communication with
10 the defendants about producing a full set of documents that
11 relate to all of these.
12      Part of the problem is that these different cases are
13 developing additional 404(b) evidence as we proceed, and so
14 it's a question of keeping up. But we are making an effort to
15 pursue the 404(b) portion of these cases together because it
16 really is the same stuff over and over again in all of these
17 cases.
18      THE COURT: So when is --
19      MS. ROSEN: So --
20      THE COURT: Yes, go ahead, Ms. Rosen.
21      MS. ROSEN: So with respect to this 404(b) that
22 Ms. Thompson is referencing, what we did receive in a different
23 case related to Guevara is a 10-page document that listed
24 probably a thousand witnesses that plaintiff claims are 404(b)
25 witnesses that they plan to --

1  THE COURT: Well, that's not sufficient.

2  MS. ROSEN: -- that they plan to be using in all of

3  the cases. This brings us back to in this particular case that

4  we don't want to be in a position of embarking on what is going

5  to be costly discovery. That's just 404(b) and, of course, we

6  have Monell to deal with.

7  THE COURT: Alleged 404(b).

8  MS. ROSEN: Correct, and we have --

9  THE COURT: Whether it's admissible at trial remains

10 to be seen.

11 MS. ROSEN: Sure. But, I mean, if there's a thousand

12 people in play, then we have to do something. I'm the

13 defendant in this. So for purposes --

14 THE COURT: Like file a motion for a limitation on

15 discovery, I would think.

16 MS. ROSEN: Of course, Judge.

17 THE COURT: I mean, a thousand?

18 MS. THOMPSON: This is the issue, Your Honor. There's

19 multiple, as the Court knows, there's multiple of these cases,

20 and if they're saying in each of these cases who are the

21 witnesses to misconduct, that includes people in each of those

22 cases who say they were coerced by the detectives in this case

23 that are related to the others. If that's, you know, five

24 people per case, you're getting up in names quickly.

25 So there's also people who are sort of innocence

1 witnesses for those cases to the extent that it's relevant for
2 those cases as to who knows that that person wasn't guilty of
3 the crime of which they were convicted.
4     I believe in that disclosure, although candidly I'm
5 reporting on something I personally wasn't involved in, that
6 we've identified or will identify who is who for each of those
7 cases. Many of them have been deposed or have testified in
8 other proceedings. We're not seeking to, you know, have
9 depositions of each of those people in this case.
10     I understand obviously it's the defendants that need
11 to decide what else they need, but I don't anticipate that that
12 disclosure is going to mean somehow that we're going to be, you
13 know, doing discovery on 404(b) for ten years. But I agree
14 it's an exhaustive list because there's a number of these
15 cases.
16     THE COURT: I think it should be more than a list of
17 names. I think it should be -- I think if you have already
18 identified these folks as having what you claim to be 404(b)
19 evidence, I think you should disclose at this point what it is
20 they're going to be testifying about.
21     MS. ROSEN: And quite frankly --
22     THE COURT: And if there have been, if there have been
23 materials that have been disclosed in other cases already --
24 and I have some of these cases but I certainly don't have all,
25 thank God -- you know, then you should reference those

1  specifically so that counsel knows.  I mean, a list of names is
2  useless.  It's useless.
3      MS. THOMPSON:  And that is the second piece of this,
4  Your Honor.  We do have a collection of all of the documents
5  which we'll be providing.  I agree with the Court.  You can't
6  just give somebody thousands of pages of documents without a
7  reference, and what we provide will relate -- will explain who
8  applies to what.
9      THE COURT:  What I want you to do, what I want you to
10 do -- and I want you to do it soon because we need to move this
11 thing along -- is disclose to them what documents relate to
12 what alleged 404(b) incident so that it's meaningful.
13     MS. THOMPSON:  We will do that, Your Honor.
14     THE COURT:  You know, you're going to have to.  I'm
15 sure you're doing that for your own purposes.  There's no
16 reason why, you know, the defendant should be in the dark about
17 the extent, because they're going to eventually, I'm sure,
18 going to challenge some of this evidence when and if this case
19 is tried and they can't do that unless they have fulsome, you
20 know, discovery on it.  So when can you do that?  Back to my
21 first question, when can you do that by?
22     MS. THOMPSON:  Those documents will be provided,
23 again, not just for this case but for all the cases by Friday,
24 Your Honor, and we'll include with them our explanation of
25 which documents apply to what.

1 THE COURT: All right. Well, I'm going to put that in
2 the order because, you know, I've been told that discovery was
3 going to be produced before and, you know, days and time rolls
4 by. So by Friday that will happen. Okay?
5 MS. THOMPSON: Understood, Your Honor.
6 THE COURT: So don't promise something you can't
7 deliver.
8 MS. THOMPSON: I understand.
9 THE COURT: All right. Good enough. So that takes
10 care of that. So the motion to compel is granted, essentially,
11 and the plaintiff is ordered to do as we just described.
12 As to the other mystery here, I don't really have an
13 answer until we know what it is, what the plaintiff is planning
14 to do about this.
15 MR. ENGQUIST: Your Honor, one --
16 MS. ROSEN: If we could get maybe a date certain about
17 it, some idea. I mean, I don't think that we can keep this
18 open for the next six months while we churn away at discovery.
19 THE COURT: Oh, most definitely not. Can you
20 elucidate without, you know, jeopardizing your relationship?
21 Can you tell me when you think this might get to the next
22 stage, let's just say?
23 MS. THOMPSON: Well, I can't, and that's not because,
24 again, I believe this is not going to be resolved. What could
25 I offer the Court here that wouldn't be, you know, a waiver of

1 our privilege? I don't know. I don't. I don't know. I mean,
2 I can't offer an answer to that. What I can say is certainly
3 if litigation has to proceed in this case and by not being
4 present Mr. Rodriguez is waiving his right to appear at
5 depositions, for instance, he's obviously waiving that right,
6 and I don't see a reason that this shouldn't proceed.
7     If at some point in the future defendants want to
8 argue that Mr. Rodriguez not being present is prejudicing them
9 in some way, I think that they should raise with the Court and
10 that that would be fair and appropriate, but I can't offer the
11 Court a date. I don't do that to --
12     THE COURT: No, I understand.
13     MS. THOMPSON: -- cause some problem. I don't know
14 what I can say.
15     THE COURT: No, I asked you if you could. I didn't
16 tell you to. But Ms. Rosen is quite right, though. We can't
17 just, you know, float along forever. He's got to be deposed,
18 right?
19     MS. THOMPSON: Correct.
20     THE COURT: But you're not in a position to depose him
21 yet anyway.
22     MR. ENGQUIST: We're still --
23     THE COURT: You have a lot of records that you want to
24 look at, right?
25     MR. ENGQUIST: Actually, the only records that we

1  really need right now are the records that we wanted in the
2  subpoena that we're still waiting on the last bit. We had
3  agreement on all the language but for the issue, if you
4  remember from last time, when it came to HIPAA, having to do
5  with whether or not we can use a third-party vendor.
6      THE COURT: Right.
7      MR. ENGQUIST: The last time we brought it up, you
8  said it makes sense having the third party do the Bates
9  stamping.
10     THE COURT: Yes.
11     MR. ENGQUIST: We still haven't gotten anything back
12 on that just so that we can get that done so that we can get
13 those records back.
14     THE COURT: When is that going to be perfected?
15     MS. THOMPSON: My understanding is that Mr. Ainsworth
16 was involved in that conversation, and I think he asked to have
17 a call to just sort of finalize this issue.
18     THE COURT: Yes.
19     MS. THOMPSON: If I'm misstating that, I apologize.
20     THE COURT: Yes.
21     MS. THOMPSON: But that needs to be resolved.
22     THE COURT: Yes, again, that has to be resolved now.
23     MS. ROSEN: I believe where we are is there's a
24 draft --
25     THE COURT: Yes.

1         MS. ROSEN:  -- with the updated language to plaintiff.
2         THE COURT:  Okay.
3         MS. ROSEN:  We're waiting on a response.
4         THE COURT:  All right.  So you're going to respond to
5    that draft by Friday.  If there's a problem with it, then you
6    need to let me know so that I can hash it out for you.  I don't
7    anticipate that will be necessary.  Okay?
8         MS. THOMPSON:  Understood.
9         THE COURT:  Then those documents should be produced
10   within seven days.
11        MS. ROSEN:  And then, Judge, we'll be noticing up his
12   dep.
13        THE COURT:  Then you will be.  Then, you know, that
14   action will prompt other actions.  But unless and until you do
15   that, I don't really need to say anything else, I don't think.
16   It's not really properly in front of me yet.
17        MS. ROSEN:  Okay, Judge.  The city is going to
18   continue to stand.  I mean, we have -- you know, there was an
19   email request for these records.  I'm telling the Court now I
20   have a great concern about producing records relating to this
21   underlying warrant.
22        THE COURT:  What have they asked for specifically?
23        MS. ROSEN:  All Ms. Thompson asked for in the email
24   once the issue about the warrant -- once we emailed them about
25   knowledge that we had about this warrant and produced the

1   warrant information, in the discussions about how we're going
2   to proceed if the client, you know, is not going to be able to
3   sit in this jurisdiction for a deposition without getting
4   arrested, she said:  Well, do you have any other records?
5           I said:  I do have some.  I certainly don't --
6           THE COURT:  Records relating to this particular
7   warrant?
8           MS. ROSEN:  To the underlying criminal case, and I'm
9   not at all comfortable producing it in a circumstance where --
10          THE COURT:  I think we can hold off on that until this
11  moves along, and then we'll see where we are at.  Okay?
12          MS. THOMPSON:  I'm fine with that, Your Honor.
13          THE COURT:  Yes.
14          MS. THOMPSON:  I'm not asking for -- if the records
15  that they're withholding relate specifically to that criminal
16  case, I'm not asking for it at this time.
17          THE COURT:  Good enough.  So that's kind of moot.
18          MS. ROSEN:  Okay.
19          THE COURT:  Anything else?
20          MS. THOMPSON:  There was one additional category of
21  documents which we haven't produced yet which I have conferred
22  with defendants about.  That is, at one time the Exoneration
23  Project that represented Mr. Rodriguez in the post-conviction
24  matter that led up to this case had a copy of John Moran's
25  file.  Mr. Moran was a prior post-conviction lawyer for

1  Mr. Rodriguez. In finalizing the discovery responses, we were
2  concerned that we possibly had that file from Mr. Moran in
3  storage, and I wanted to just make sure that anything from
4  those documents had been produced in this case that needed to
5  be produced.
6          THE COURT: Yes.
7          MS. THOMPSON: I think we've determined that we don't
8  actually still have that file, but I think Mr. Moran does and
9  I've been in touch with him to try to get the file from him.
10         THE COURT: Oh, dear.
11         MS. THOMPSON: I don't think this is going to be some
12 huge trove of additional documents because I think we've
13 produced everything from it, but I just want to make sure we
14 have. I don't believe that I can resolve that by Friday
15 because I'm waiting for Mr. Moran to call me back. But as soon
16 as he and I have conferred, I will promptly make an effort to
17 review that file and produce anything that should be produced,
18 Your Honor.
19         THE COURT: Well, I'll take you at your word about
20 that, but I think I better check in with you guys sooner rather
21 than later.
22         MS. THOMPSON: That's fair, Your Honor.
23         THE COURT: Okay. So what would you suggest in terms
24 of a logical time frame in which to take up any and all other
25 issues that we're messing around with?

1 MS. THOMPSON: My suggestion would be two or three
2 weeks.
3 THE COURT: Yes.
4 MS. THOMPSON: And obviously if there's an issue with
5 the particular protective order issue, we can do that promptly.
6 THE COURT: Yes, you can bring that sooner. Let's say
7 three weeks.
8 THE CLERK: Tuesday, February 18th, 9:30.
9 MS. ROSEN: That's fine, Judge.
10 THE COURT: Okay?
11 MS. THOMPSON: Yes, Your Honor.
12 THE COURT: All right. Thank you.
13 MS. THOMPSON: Thank you.
14 MS. ROSEN: Thank you, Judge.
15 MR. ENGQUIST: Thanks.
16 THE COURT: Okay.
17 (Proceedings concluded.)
18                    C E R T I F I C A T E
19     I, Patrick J. Mullen, do hereby certify that the
foregoing is an accurate transcript produced from an audio
20 recording of the proceedings had in the above-entitled case
before the Honorable SUSAN E. COX, one of the magistrate judges
21 of said court, at Chicago, Illinois, on January 28, 2020.
22                                     */s/ Patrick J. Mullen*
                                    Official Court Reporter
23                                     United States District Court
                                    Northern District of Illinois
24                                     Eastern Division
25