**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Ricardo Rodriguez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18 CV 7951 |
| | ) | |
| The City of Chicago, et al., | ) | District Judge Mary M. Rowland |
| | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

Defendants, City of Chicago, Reynaldo Guevara, Richard Curley, Robert Biebel, Ed Mingey, Lee Epplen, M. Sanders, and JoAnn Halvorsen, as special representative for the Estate of Ernest Halvorsen[1], by and through their respective undersigned attorneys, move this Court to dismiss Plaintiff's Second Amended Complaint, and, in support thereof, state as follows:

**INTRODUCTION**

Plaintiff Ricardo Rodriguez ("Plaintiff") commenced this action against eight individual police officers ("Defendant Officers") and the City of Chicago ("City") under 42 U.S.C. § 1983 and Illinois state law, including a *Monell* claim, alleging he was wrongfully convicted for the 1995 murder of Rodney Kemppainen. Plaintiff is currently a fugitive from justice stemming from an outstanding felony warrant that was issued nearly one year ago, on August 27, 2019. Because of Plaintiff's fugitive status, Plaintiff's Second Amended Complaint must be dismissed pursuant to the fugitive disentitlement doctrine.

The fugitive disentitlement doctrine allows courts to dismiss a civil action brought by individuals who are fugitives from justice. *Gutierrez-Almazan v. Gonzales,* 453 F.3d 956, 957

---

[1] Former police officer J. Mohan is also named as a Defendant in this lawsuit, but he is deceased and has not been served.

(7th Cir. 2006). Plaintiff cannot prosecute this case while he is a fugitive or sufficiently participate as required in this litigation because he cannot sit for a deposition or appear at trial to testify. In fact, Plaintiff's fugitive status has already caused great delay in this case. More importantly, if Defendants were to win this case on the merits, enforcement of an adverse judgment for costs against Plaintiff would be impossible because Plaintiff's fugitive status places him beyond judicial control. Advancing discovery in this case while Plaintiff remains a fugitive would be a waste of money and resources for both the parties and the Court. Plaintiff's attempt to continue to obtain a positive judgment while remaining a fugitive is an affront to this Honorable Court and the judicial process as a whole. Accordingly, the Court should grant Defendants' Motion to Dismiss and dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice.

## BACKGROUND

On August 27, 2019, unbeknownst to Defendants, an arrest warrant issued for Plaintiff on charges of the Class X felony of home invasion (720 ILCS 5/19-6(a)(3)), Class 2 felony of kidnapping for ransom (720 ILCS 5/10-1(a)(2)), and Class 3 felony of aggravated unlawful restraint (72 ILCS 5/10-3.1(a)). *See* Exhibit 1, Active Warrant.[2] Plaintiff's counsel has not disclosed when they became aware of these charges against Plaintiff, but Plaintiff himself has most likely been aware of the warrant since it was issued. Before Defendants became aware of Plaintiff's active arrest warrant, on October 1, 2019, Defendant Officers issued written discovery to Plaintiff. Plaintiff sought four extensions to tender his discovery responses between October 30 – November 13. Based upon the last extension, Plaintiff's responses were due on November 13,

---

[2] As this Court can likely glean, the alleged criminal offenses that underly the warrant are extremely serious. The City has obtained some police records related to these offenses but based upon the City's view that Plaintiff should not be allowed to use this case to obtain discovery in his criminal case, the City has not produced any of these records. When this issue was raised with the Magistrate Judge, she agreed that the City should not produce the records. To the extent, this Court believes a review of the police records are necessary to the disposition of this motion, Defendants can provide the records *in camera* for review.

2019.  Between November 14, 2019 and December 18, 2019, Defendant Officers' counsel inquired about Plaintiff's responses to written discovery numerous times, with no response.  *See* Exhibit 2, Correspondence between counsel.  During that time, on November 22, 2019, the Cook County Circuit Court conducted a hearing on Plaintiff's Petition for a Certificate of Innocence ("COI").  Plaintiff's counsel in this matter, Tara Thompson, appeared on his behalf at that hearing.  Plaintiff did not appear at the hearing.  Ms. Thompson advised the court that Plaintiff could not be present because he was with his grandparents in California, who were "not doing well."  *See* Nov. 22, 2019 COI Transcript, attached as Exhibit 3, p. 3:10-15.  During that hearing, she pointed out that many other members of Plaintiff's family were present to support Plaintiff and that he understood what was occurring at the hearing and wanted it to proceed despite his inability to be present.  *See* Ex. 3, p. 3:10-20.  The criminal court was not informed that Plaintiff was charged with serious felonies in another case and that there was an outstanding arrest warrant on those charges.

On December 18, 2019, Plaintiff's counsel advised Defendant Officers that Plaintiff would respond to written discovery by December 23, 2019, but, on that date, Plaintiff's counsel advised that she was still conferring with Plaintiff, and would be doing so that night, and that once she did, she would circulate Plaintiff's responses.  *See* Ex. 2, pp. 1-2.

Then, on January 7, 2020, Plaintiff's counsel advised that Plaintiff had "been out of state caring for some elderly relatives" and that Plaintiff would respond to written discovery on January 10, 2020.  *See* Exhibit 4, Jan. 7, 2020 E-mail from Plaintiff's Counsel.  In the meantime, at the January 8, 2020 status in front of the Magistrate Judge, Plaintiff's counsel advised the Court that Plaintiff would respond to written discovery on January 10, 2020.  January 10th came and went, and Plaintiff still did not provide his discovery responses.  During a call with Plaintiff's counsel related to other discovery matters, Defendant Officers' counsel advised one of Plaintiff's counsel,

Russell Ainsworth, that Defendants still had not received Plaintiff's responses. Mr. Ainsworth did not know the status of Plaintiff's discovery responses and advised that he would inquire with his colleagues and then update Defendant Officers' counsel.

On January 14, 2020, Plaintiff's counsel advised that Plaintiff would respond to written discovery on January 15, 2020. On January 16, 2020, having still not received Plaintiff's responses, Defendant Officers filed a Motion to Compel. Dkt. 72. On January 19, 2020, Plaintiff responded to written discovery, over two months after Plaintiff's counsel had initially represented that they would be able provide the responses.

At no time during this period that Defendants were awaiting the long-due responses did Plaintiff's counsel disclose that a still-active arrest warrant had been issued for Plaintiff; the only reason counsel ever provided for the delay was that Plaintiff was unavailable because he was spending time with his elderly relatives. Instead, while Defendants were waiting for Plaintiff's discovery responses, Defendants' counsel independently learned that there was an active warrant for Plaintiff's arrest. On January 14, 2020, Defendants' counsel produced the warrant documents they had obtained. On January 23 and 24, 2020, Plaintiff's counsel advised that despite the outstanding warrant for Plaintiff's arrest, Plaintiff's counsel still believed that Plaintiff could prosecute this case and that Plaintiff's counsel intended to make Plaintiff available for deposition when and if it was scheduled. On January 29, 2020, Defendant Officers sent Plaintiff a Notice of Deposition for February 11, 2020.

In response to the deposition notice, Plaintiff's counsel informed Defendants that he would produce Plaintiff at a mutually agreeable time, but requested that his deposition occur at the Mexican Consulate's Office. *See* Exhibit 5, Plaintiff's Feb. 5, 2020 Letter ("Feb. 5 Letter"). Plaintiff's counsel did not explain why Plaintiff needed the assistance of the Mexican Consulate

now in this civil case or why that assistance must occur physically at the Consulate. To the contrary, Plaintiff's counsel obliquely warned Defendants and their counsel, "We trust that Defendants do not intend to use this civil litigation or their connection to law enforcement or the involvement of law enforcement as a way of gaining tactical advantage in this litigation or in this deposition." *See* Ex. 5.

Defendant Officers' counsel responded to the request and informed Plaintiff's counsel that Defendants would not agree to Plaintiff's deposition going forward at the Mexican Consulate because agreeing to facilitate a deposition outside Illinois or U.S. jurisdiction would likely violate ethical and legal obligations. Defendant Officers' counsel cited Illinois law (720 ILCS 5/31-5) that prohibits anyone from being complicit in concealing or aiding a known fugitive, and stated that Plaintiff's status put Plaintiff beyond judicial control. *See* E-mail correspondence between counsel, attached as Exhibit 6, p. 3. Plaintiff's counsel then responded by stating that Plaintiff wished to seek the advice and support of the Consulate during his deposition and denied that "legal or ethical obligations would be at risk." *Id.* at pp. 2-3. In reply, Defendant Officers' counsel repeated that they would be significantly prejudiced by being potentially implicated in serious crimes. *Id.* at pp. 1-2. Further, Defendants stated it was not clear that Plaintiff was entitled to advice and consultation with the Consulate, that Plaintiff had not explained how he would be prejudiced by having his deposition go forward at one of Defendants' attorney's offices, and that it was apparent he was manipulating the location of the deposition because of his fugitive status to avoid arrest. *Id.*

In her last response, Plaintiff's counsel did not cite legal authority to establish that Plaintiff has a right to have his deposition take place at the Mexican Consulate; counsel asserted only that he "has the right to *consult* with the consulate about legal matters" (with no citation). Ex. 6, p. 1.

Ignoring Defendants' contention that taking the deposition at the Consulate would be prejudicial because it would likely violate the law and ethical duties, Plaintiff's counsel stated that "Defendants have articulated no prejudice." *Id.* Plaintiff's counsel also did not directly deny Defendants' contention that Plaintiff was insisting on being deposed at the Consulate so he could remain a fugitive from justice in connection with the extremely serious crimes set forth in the arrest warrant—Plaintiff remarked only that the location was not used to "obstruct justice." *Id.*

## LAW

"The fugitive disentitlement doctrine is a discretionary device by which courts may dismiss criminal appeals or civil actions by or against individuals who are fugitives from justice." *Gutierrez-Almazan,* 453 F.3d at 957 (*citing Sarlund v. Anderson,* 205 F.3d 973, 984 (7th Cir. 2000)). In civil actions, "the rule should apply with greater force" because "an individual's liberty is not at stake." *Conforte v. Comm'r of Internal Revenue*, 692 F.2d 587, 589 (9th Cir. 1982). The fugitive disentitlement doctrine has been invoked in a variety of contexts and has specifically been applied to dismiss section 1983 civil actions. *Griffin v. City of New York Corr. Comm'r,* 882 F. Supp. 295, 297 (E.D.N.Y. 1995).

In fact, many federal courts have exercised their inherent authority to deny access to the courts to fugitives bringing federal civil rights actions pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Seibert v. Johnston,* 381 F. Supp. 277 (E.D. Okla. 1974); *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657 (5th Cir. 1976); *Hughes v. Colorado Dept. of Corr.,* No. 07-CV-00354, 2009 WL 3074619 (D. Col. Sept. 21, 2009); *Cordell v. Tilton,* 515 F. Supp. 2d 1114 (S.D. Cal. 2007); *Ali v. Sims,* 788 F.2d 954 (3rd Cir. 1986); *Messa v. Rubin,* 897 F. Supp. 883 (E.D. Pa. 1995). In doing so, the federal courts do not distinguish between fugitives of federal or state jurisdiction. *In re*

*Prevot,* 59 F.3d 556, 566 (6th Cir. 1995); *Broadway,* 530 F.2d at 659 (*citing United States v. Shelton,* 483 F.2d 848 (5th Cir. 1973)).

The fugitive disentitlement doctrine is "an equitable one [that] rests upon the power of the courts to administer the federal courts system." *Pesin v. Rodriguez,* 244 F.3d 1250, 1252-53 (11th Cir. 2001) (*citing Ortega-Rodriguez v. United States,* 507 U.S. 234, 244 (1993)). Even though a party's fugitive status "does not strip the case of its character as an adjudicable case or controversy, …it disentitles the [fugitive] to call upon the resources of the court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 365-66 (1970). "In applying the doctrine a court should be guided by pragmatic considerations." *Colorado v. Platteville Police Dept.,* No. 07-cv-486, 2008 WL 3669079, at *2 (W.D. Wisc. Apr. 21, 2008) (*citing Gutierrez-Almazan,* 453 F.3d at 957). "The *core consideration* is whether a party's actions have made enforcement of an adverse judgment impossible." *Id.* at *2 (*citing Gutierrez-Almazan,* 453 F.3d at 957) (emphasis added).

Among the rationales often cited behind the underlying policies of the fugitive disentitlement doctrine are: (1) the impossibility of enforcing judgment against one not willing to subject himself to the court's authority; (2) the inequity of allowing a fugitive to use the resources of the court only if the outcome is an aid to him; (3) the need to avoid prejudice to the non-fugitive party or parties; (4) discouragement of flights from justice; (5) the promotion of the efficient, dignified operation of the courts to avoid expending scarce judicial resources on those who have declined to observe the rules established by the courts; (6) the risk of delay or frustration in determination of the merits; and (7) imposing a penalty for flouting the judicial process. *See Sarlund,* 205 F.3d at 975 (holding the federal disentitlement doctrine was justified because a fugitive is entirely beyond judicial control, thereby prejudicial to adversaries who could not collect an adverse judgment and were subject to unchecked harassment through the legal process); *Bar-*

7

*Levy v. U.S. Dept. of Justice,* 990 F.2d 33, 35 (2d Cir. 1993) (identifying four rationales: (1) enforceability of an adverse judgment, (2) penalty for flouting the judicial process; (3) discouraging fleeing from justice, and (4) avoiding prejudice to other party in the litigation); *Empire Blue Cross & Blue Shield v. Finkelstein,* 111 F.3d 278, 280 (2d Cir. 1997) (citing the same four rationales as *Bar-Levy*); *United States v. Barnette,* 129 F.3d 1179, 1183-84 (11th Cir. 1997) ("The rationales for this doctrine include the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that 'fugitive' to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice."); *Ali,* 788 F.2d at 959 (describing the basis for the doctrine include that "the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim" and that "it is unreasonable to expect a court to expend its scarce resources on one who has blatantly disregarded the court's procedures"); *Hageman v. Morrison Cnty. Sheriff's Office,* No. 18-cv-1005, 2018 WL 7050677, at *3 (D. Minn. Dec. 18, 2018) (citing the same rationales as *Barnette*); *Hughes*, 2009 WL 3074619, at *4 (citing "the fundamental considerations undergirding the fugitive disentitlement doctrine" as "the efficacy of any order or judgment issued by this Court if this matter proceeds," the "significant risk of delaying or frustrating the Court's consideration of the merits of [the plaintiff's] claims," and the "affront to the judicial process"); *Messa v. Rubin,* 897 F.Supp. 883, 886 (E.D. Pa. 1995) (explaining that the doctrine is "necessary to ensure respect for the court's procedures, to avoid expending scarce judicial resources on those who have declined to observe the rules established by the courts, and to deter persons from becoming fugitives" (citations omitted)); *Griffin*, 882 F. Supp. at 297 (applying the doctrine in a § 1983 action "[i]n light of the

'salutary effects of discouraging escape,' the backlog of civil cases, [and] scarce judicial resources" among other reasons).

## ARGUMENT

Plaintiff is a fugitive from justice. *See* Black's Law Dictionary (11th ed. 2019) (defining a fugitive as "[a] criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding."). There is an outstanding felony arrest warrant for Plaintiff on extremely serious crimes. *See* Ex. 1. Plaintiff has most likely known of the warrant since shortly after it was issued in August 2019.[3] If not, his failure to appear at his November 2019 COI hearing, a hearing important enough for his family to attend without him, is strong evidence that he was aware of the arrest warrant then. Nevertheless, he and his counsel have certainly known since January 2020 when Defendants provided that information through discovery.

In requesting that Plaintiff be deposed at the Mexican Consulate, Plaintiff has not denied that he seeks that location in order to avoid arrest. State or federal law enforcement is forbidden from entering the Consulate. Vienna Convention on Consular Relations, 21 U.S.T. 77, Apr. 24, 1963, T.I.A.S. No. 6820 ("Consular premises shall be inviolable."); *see also S & S Mach. Co. v. Masinexportimport*, 802 F. Supp. 1109, 1111 (S.D.N.Y. 1992) (concluding consulates, like embassies, are physically inviolable). Plaintiff's need to "consult" the Consulate now, in civil litigation, is suspect. In fact, the Consulate has never been actively involved in the litigation before this request.

Tellingly, Plaintiff's counsel warned, "[w]e trust that Defendants do not intend to use this civil litigation or their connection to law enforcement or the involvement of law enforcement."

---

[3] Some of Plaintiff's immediate family members have been arrested for their participation in the alleged kidnapping and ransom scheme, and there is an outstanding warrant for Plaintiff's sister as well.

Ex. 5. This seems to be thinly veiled attempt to seek assurances from the City that it will not inform law enforcement of Plaintiff's whereabouts.[4] Importantly, neither Plaintiff nor his counsel have stated at any time that he has any intention to resolve his outstanding felony warrant, and his request that his deposition takes place at the Consulate and that Defendants should not involve law enforcement, strongly indicate that Plaintiff seeks to continue to *avoid* arrest and remain a fugitive. Given Plaintiff's intention to remain a fugitive and avoid justice, dismissal of this litigation is appropriate.

## I. As A Fugitive, Plaintiff Is Not Entitled To Call On The Judicial Resources Of This Court.

The principles that underlie the fugitive disentitlement doctrine demonstrate why this suit must be dismissed. Plaintiff is using the resources of the court in a lawsuit that seeks only to benefit him. *See Hageman,* No. 18-cv-1005, 2018 WL 7050677, at *3. Not only is he seeking to benefit financially in this suit, but by asking Defendants to do nothing that would alert law enforcement, he is using the suit to protect himself from capture. Dismissal would discourage his flight from justice and the manipulative use of judicial resources for a person who is flouting the judicial process that the doctrine is designed to prevent. *See id.* Dismissal would also avoid expending scarce judicial resources on those who have declined to observe the rules established by courts. *Seibert,* 381 F. Supp. at 280 (holding, in a section 1983 case, a fugitive plaintiff is "disentitled 'to call upon the resources of the Court for determination of his claims'"); *Ali*, 788 F.2d at 959 (holding "the fugitive from justice has demonstrated such disrespect for the legal

---

[4] Defendants' attorneys take exception to Plaintiff's request because their clients are either current or former law enforcement or the City of Chicago, which encompasses the Chicago Police Department, all of which are authorized to know about, and with respect to Defendant Officers, attend Plaintiff's deposition. Further, as discussed more below, Defendants' counsel believe they may be violating Illinois criminal law and/or ethical requirements if they assist Plaintiff in evading a felony arrest warrant.

processes that he has no right to call upon the court to adjudicate his claim"); *Griffin*, 882 F. Supp. at 297 (enforcing the doctrine to protect "scarce judicial resources" and to discourage escape).

## II.    Plaintiff's Fugitive Status Impedes This Litigation And Prejudices Defendants.

Moreover, Plaintiff's fugitive status has and will delay this litigation and is prejudicial to Defendants. *See Sarlund*, 205 F.3d at 975.  His status as a fugitive has already delayed discovery significantly, from failing to produce written discovery and forcing Defendants to file a motion to compel, to preventing the scheduling of his deposition.  "[F]undamental considerations undergirding the fugitive disentitlement doctrine" include the "significant risk of delaying or frustrating the Court's consideration of the merits of [the plaintiff's] claims." *Hughes*, 2009 WL 3074619, at *4.

Further impeding discovery, Plaintiff's current position that his deposition will occur only at the Mexican Consulate puts Defendants and their counsel at risk of committing legal and ethical violations.  This forces Defendants to spend time and resources objecting to a deposition location, further delaying the deposition, or alternatively, if Defendants acquiesce, creates these legal and ethical risks.  Either way Defendants are significantly prejudiced, which further supports dismissal under the fugitive entitlement doctrine. *Sarlund,* 205 F.3d at 975; *Finkelstein,* 111 F.3d at 280; *Hughes*, 2009 WL 3074619, at *4.

Although Plaintiff has ignored these concerns, the legal and ethical risks in agreeing to depose Plaintiff at the Mexican Consulate—outside the reach of Illinois law enforcement – are significant.  For one, by agreeing to such terms, caselaw suggests that the parties' counsel would be violating ethical obligations. *See Matter of DeMassa*, No. 86-C-19529, 1991 WL 232248, at *11 (Cal. Bar Ct. Nov. 7, 1991) (finding various states' ethical "opinions also recognize the

attorney's obligation to advise the fugitive client to surrender to authorities and prohibit acts by the attorney to assist or facilitate the fugitive in avoiding capture . . . .").

Then there are the criminal implications. The parties and their counsel may be assisting in aiding and abetting a fugitive in violation of Illinois law, which Defendants' counsel are simply not willing to risk. Illinois criminal law states:

> (a) Every person not standing in the relation of husband, wife, parent, child, brother or sister to the offender, who, with intent to prevent the apprehension of the offender, conceals his knowledge that an offense has been committed or harbors, aids or conceals the offender, commits a Class 4 felony.

> (b) Every person, 18 year of age or older, who, with intent to prevent the apprehension of the offender, aids or assists the offender, by some volitional act, in fleeing the municipality, county, State, country, or other defined jurisdiction in which the offender is to be arrested, charge, or prosecuted, commits a Class 4 felony.

720 ILCS 5/31-5.

Federal law prohibits interstate or foreign travel with the intent "to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime . . . which is a felony under the laws of the place from which the fugitive flees." 18 U.S.C. § 1073. Entering the Consulate would prevent law enforcement from apprehending Plaintiff. Defendants and their counsel should not be forced to take a deposition under the risk that they may be committing a state crime as well as considered accessories, conspirators, or aiders/abettors of a federal crime.

Simply put, Defendants are concerned that if they are complicit in allowing Plaintiff to be deposed at the Mexican Consulate without informing the authorities, they would minimally be aiding and abetting a known fugitive to avoid arrest, or further, to assist Plaintiff in fleeing the

jurisdiction of Illinois and the United States by entering the Consulate, and perhaps in using the assistance of the Consulate to flee to another country.

Furthermore, Plaintiff's fugitive status will impede the litigation going forward.  Plaintiff already failed to appear at his COI hearing on November 22, 2019.  Plaintiff is not being forthright with his own attorneys if he conveyed to them that he is unavailable because he is visiting elderly family members out of state, when he was actually on the run.  All indications thus far are that Plaintiff will likely also fail to appear at trial.  At that point, the parties will have gone through months, or more likely, years, of discovery and litigation, costing hundreds of thousands of dollars in costs and attorneys' fees and will ultimately waste an enormous amount of precious judicial resources.

### III.    An Adverse Judgment Is Unenforceable, So As A Fugitive, Plaintiff Bears No Risk In Continuing To Pursue This Litigation.

"The core consideration is whether a party's actions have made enforcement of an adverse judgment impossible." *Colorado,* 2008 WL 3669079, at \*2 (*citing Gutierrez-Almazan,* 453 F.3d at 957).  If Defendants win this case on the merits, Defendants would be entitled to costs.  *See Richardson v. City of Chicago,* 740 F.3d 1099, 1102 (7th Cir. 2014) (costs awarded to prevailing party as a matter of course).  Plaintiff has already sought extensive *Monell* discovery in this case.  The costs that will be spent on both *Monell* and non-*Monell* discovery in this case will be significant.  Thus, on point with *Sarlund* and *Colorado*, if Defendants win on the merits, it will be impossible for the Court to enforce an order requiring Plaintiff to pay for the costs that Defendants would be entitled to receive.  *See also Bar-Levy,* 990 F.2d at 35 ("[A] decision respecting a fugitive is effectively unenforceable because the fugitive is beyond the control of the court.") (*quoting United States v. Persico*, 853 F.2d 134, 137 (2d Cir. 1988)).  Defendants should not have to bear

their own costs if successful because Plaintiff is a fugitive exploiting judicial resources to his sole benefit.

In *Sarlund,* a fugitive plaintiff with outstanding warrants had his § 1983 suit dismissed by the Seventh Circuit pursuant to the fugitive disentitlement doctrine because "[his] fugitive status place[d] him entirely beyond judicial control, thus creating a situation severely prejudicial to his adversaries[,]" that is, "he [could not] be deposed by defendants or made to pay costs (should he lose) or attorneys' fees." 205 F.3d at 975. Further, the court dismissed the case because it was the only way to prevent plaintiff from using the litigation process and federal court system "to harass the defendants with impunity, and no measure that we can think of short of dismissal of his suit that will protect the defendants from such harassment." *Id.* "[T]here have been a number of cases in which civil suits or appeals were dismissed because the plaintiff's or appellant's fugitive status prejudiced his adversary and no alternative protection was feasible." *Id., citing Barnette,* 129 F.3d at 1183-84; *Finkelstein,* 111 F.3d at 282; *Broadway,* 530 F.2d 657.

In *Colorado v. Platteville Police Dept.,* the court dismissed a fugitive plaintiff's § 1983 action with prejudice under the fugitive disentitlement doctrine. As a result of his fugitive status, the plaintiff had failed to communicate with his counsel after warrants were issued for his arrest in Wisconsin, did not notify counsel of his whereabouts, and could not be deposed or provide the requisite medical authorization. *Colorado*, 2008 WL 3669079 at *2. The court held that "plaintiff's fugitive status makes enforcement of an adverse judgment against him impossible; if defendants were to win on the merits of this lawsuit, plaintiff would avoid payment of costs or attorneys' fees because his whereabouts are unknown." *Id.* at *3. The plaintiff's fugitive status "placed him entirely beyond judicial control and created a situation that is severely prejudicial to defendants." *Id.* at *2. The court also recognized that "permitting plaintiff to continue this lawsuit

14

while he is a fugitive would permit him to reap the benefits of a judicial system the orders of which he has continued to disrespect by avoiding custody." *Id.* at *3. Citing the plaintiff's demonstrated "disrespect for the judicial system" and the "prejudice" to the defendants, the court dismissed the case. *Id.*

Like *Colorado* and *Sarlund*, Plaintiff is a fugitive from justice, beyond judicial control in the event of an adverse judgment, and bears no risk in continuing this litigation while expending the time and resources of the courts and Defendants. Thus, Plaintiff is disentitled to pursue this action. This Court should therefore dismiss this case with prejudice.

## CONCLUSION

WHEREFORE, Defendants respectfully request this Court to grant this Motion to Dismiss Plaintiff's Second Amended Complaint with prejudice, as well as any other relief this court deems just.

Dated: June 9, 2020                    Respectfully submitted,

MARK A. FLESSNER,
Corporation Counsel of the City of Chicago

By: ___/s/ *Josh M. Engquist*___         By: ___/s/ *Eileen E. Rosen*___
Attorney for Defendants Halvorsen, Curley,    Attorney for Defendant City of Chicago
Biebel, Mingey, Epplen, and Sanders        Special Assistant Corporation Counsel
Special Assistant Corporation Counsel
James G. Sotos                         Eileen E. Rosen
Josh M. Engquist                     Catherine M. Barber
Jeffrey R. Kivetz                    Theresa Berousek Carney
David A. Brueggen                  Austin G. Rahe
The Sotos Law Firm, P.C.            Rock Fusco & Connelly, LLC
141 W. Jackson Blvd., Suite 1240A      321 N. Clark Street, Suite 2200
Chicago, Illinois 60604             Chicago, Illinois 60654
(630) 735-3300                   312.494.1000/erosen@rfclaw.com

15

By: ___ /s/ *Thomas M. Leinenweber* ___
Attorney for Defendant Guevara
Special Assistant Corporation Counsel
Thomas M. Leinenweber
James V. Daffada
Leinenweber, Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, Illinois 60602
(312) 606-8705