# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICARDO RODRIGUEZ, | ) |
| Plaintiff, | ) Case No. 18 CV 7951 |
| v. | ) Judge Rowland |
| REYNALDO GUEVARA, et al. | ) Magistrate Judge Cox |
| Defendants. | ) |
| | ) JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Ricardo Rodriguez, through his attorneys, hereby responds in opposition to Defendants' motion to dismiss, stating in support as follows:

**Introduction**

Defendants have received responses to all discovery posed and Plaintiff's assurances that he will sit for his deposition. Nevertheless, Defendants seek to dismiss his case where they do not even have grounds to compel his deposition. Defendants act like Romeo, not bothering to check if Juliet was indeed dead. Except Defendants wish Plaintiff to drink the poison. This is an untenable proposition.

The fugitive disentitlement doctrine exists to prevent a plaintiff from using the courts as a sword but then shielding himself from criminal exposure by hiding. A decision to invoke the doctrine depends on a combination of factors, including whether 1) the plaintiff is a fugitive from justice, typically after having been convicted of a crime; 2) the criminal case for which he is a fugitive overlaps with the pending civil case; 3) the plaintiff fails to participate in the case; and 4) Defendants suffer prejudice as a result. Defendants cannot satisfy any of these factors here.

Plaintiff has not been convicted of a crime and is not a fugitive from justice. His criminal and civil cases are completely unrelated. Plaintiff has responded to discovery and any delay in responding to discovered has caused Defendants zero prejudice. Defendants' motion must be denied.

## Factual Background

Plaintiff spent more than 22 years in prison for a murder he did not commit. He fought from the worst of Illinois's prisons, and at times from solitary confinement, for over two decades, to prove he had been framed by notorious Chicago detectives Reynaldo Guevara and Ernest Halvorsen and their colleagues. Eventually one of the witnesses who identified Plaintiff at his criminal trial recanted and explained his inculpatory testimony had been fabricated by Guevara, and another witness came forward to reveal that Defendants had buried critical exculpatory information, and the State moved to vacate his conviction. Plaintiff filed this suit to seek redress for the physical and emotional trauma he endured for nearly half his life as a result of Defendants' misconduct.

Since Plaintiff filed this lawsuit, discovery has proceeded in a manner that is fairly typical of the many cases that Plaintiff's counsel has litigated against Defendants' counsel. On May 29, 2019, Plaintiff provided fulsome MIDP disclosures, including numerous witnesses and over 6,500 pages of documents. He disclosed an additional 300 pages of documents along with his discovery responses. On April 28, 2020, he also identified a list of potential 404(b) witnesses, the scope of their knowledge, and any contact information he had for them. Plaintiff produced extensive relevant 404(b) and *Monell* material in this and other cases pending in this district involving Defendant Guevara and Mr. Halvorsen.

Defendants correctly point out that Plaintiff did indeed request extensions to serve his written discovery responses. As did Defendants. Plaintiff served discovery requests on August 30, 2019. Defendant City served its response to Plaintiff's first set of requests for production on November 12, 2019.

Plaintiff has participated in discovery. On September 20, 2019, Plaintiff sent deposition notices for 14 third-party witnesses and defendants. Dkt. 98 (Joint Status Report) at 2. Defendants stated that they wanted to postpone depositions until they had Plaintiff's discovery responses, which Plaintiff served on January 19, 2020. Dkt. 102-1 (Def. Ex. 4) at PageID 1051. Plaintiff's discovery responses were indeed late. Any delays on Plaintiff's side are regrettable, and are attributable exclusively to Plaintiff's counsel's workload.

At the end of January 2020, Plaintiff notified Defendants that he would begin attempting to reschedule the depositions he originally noticed in September. Dkt. 102-1 (Def. Ex. 4) at PageID 1051-52. Shortly after that, Defendants sent a notice for Plaintiff's deposition, and Plaintiff's counsel requested dates in late-February or early-March. Dkt. 102-1 (Def. Ex. 5) at PageID 1054-55. Plaintiff's counsel also requested dates for Defendants' depositions. *Id.* Defendants did not provide dates for their depositions. The parties were conferring about when and where Plaintiff's deposition would occur, right up until the coronavirus pandemic brought in-person oral discovery to a standstill. While the shutdown has impacted both sides' abilities to move discovery forward, no one wants this to move this case forward more than Plaintiff. He remains willing and able to give a deposition, and has never suggested otherwise. Defendants have not asked for his deposition since March. Plaintiff has never refused to attend.

Meanwhile, the parties have begun the process of meeting and conferring about discovery responses, and Plaintiff sent two fully executed FERPA releases to Defendants so they could

3

seek his educational records. Ex. A (Email Exchange). In other words, discovery has proceeded fairly typically in this case, and the parties are doing what they can to continue discovery in the midst of a global pandemic.

Defendants, having failed since March to make any attempts to schedule Plaintiff's deposition or confer in any way about this issue, nevertheless seized this discovery slow-down as opportunity to baselessly accuse Plaintiff of failing to prosecute his case because of an outstanding arrest warrant, even though the record establishes just the opposite. Apart from the arrest warrant itself, Defendants point to nothing to support their contention that Plaintiff is beyond the reach of this Court, that the warrant is in any way impacting his ability to litigate this case, or that they have faced, or will face any prejudice whatsoever. Defendants' motion is based on a tortured interpretation of the fugitive disentitlement doctrine and unfounded speculation, and is not grounded in any fact. This Court should deny it.

**Argument**

The fugitive disentitlement doctrine is a narrow, discretionary, and punitive doctrine that Courts can use to dismiss egregious abuses of the judicial system by individuals who are fleeing a criminal proceeding. Courts apply it sparingly and have not set out a specific test to determine when to invoke it. Instead it is a fact-specific determination in which the party moving to dismiss must show both that the nonmovant is a fugitive, and some combination a relationship between the civil case and the underlying nonmovant's criminal case, the nonmovant's failure to participate in the litigation, and prejudice to the movant.

Courts differ in their interpretation and application of these terms. For instance, courts define "fugitive" differently. Some courts, like the Supreme Court, have applied this doctrine only when the nonmovant has escaped custody. *See, e.g., Ortega-Rodriguez v. United States*, 507

U.S. 234, 236-39 (1993) (flight following conviction); *United States v. Sharpe*, 470 U.S. 675, 681 n.2 (1985); *id*. at 721 n.1 (Stevens, J., dissenting) (escape following sentencing); *Estelle v. Dorrough*, 420 U.S. 534, 534 (1975) (escape from jail following sentencing); *Molinaro v. New Jersey*, 396 U.S. 365, 365 (1970) (jumped bail following conviction); *Eisler v. U.S.*, 338 U.S. 189, 191 (1949) (flight abroad following conviction)Some lower courts have construed "fugitive" more broadly to include individuals who are avoiding arrest warrants. And while courts generally apply this doctrine in the context of criminal and immigration cases, *see, e.g., United States v. Segura*, 726 F. App'x 490, 491 (7th Cir. 2018) (criminal appeals); *Dembele v. Gonzales*, 168 F. App'x 106, 108 (7th Cir. 2006) (immigration), a few have applied it in civil cases, *see, e.g., Colorado v. Platteville Police Dep't*, No. 07-CV-486-BBC, 2008 WL 3669079, at *2 (W.D. Wis. Apr. 21, 2008) (applying in a civil context after plaintiff has escaped custody). Of those that apply it in civil cases, many apply it only "when the civil action relates to the underlying criminal conviction from which the claimant has fled." *United States v. $32,420.00 in U.S. Currency*, No. 93 C 4936, 1994 WL 148697, at *1 (N.D. Ill. Apr. 20, 1994). A determination that a person is not a fugitive is dispositive. Whether the civil case is unrelated to the criminal one can be dispositive. The bulk of the inquiry, however, is fact-specific and requires careful attention to the impact of the nonmovant's status.

The crux of the doctrine is whether the nonmovant, by virtue of his fugitive status, has refused to engage in litigation and that refusal has caused harm to the defendants or the court. Dismissal under the fugitive disentitlement doctrine is a last-resort remedy. Only after having exhausted all alternative sanctions against such a litigant can a court dismiss a case under the fugitive disentitlement doctrine. *See generally Degen v. United States*, 517 U.S. 820, 823 (1996). It is in many ways akin to a dismissal for failure to prosecute. *See Colorado*, No. 07-CV-486-

5

BBC, 2008 WL 3669079, at *2 (citing plaintiff's "failure to prosecute" as grounds for dismissal). Courts will not dismiss under this doctrine a lawsuit filed by a civil plaintiff with an outstanding, unrelated warrant, where the plaintiff is participating in litigation and has disobeyed no court orders.

Dismissal here under the fugitive disentitlement doctrine would be inappropriate and unnecessary here for a number of reasons. First, Plaintiff is not a fugitive and any potential criminal exposure he currently faces is unrelated to this civil case. Second, through counsel he has been actively communicating with defendants' counsel and pursuing his case. Finally, Defendants have suffered no prejudice.

### 1. *Plaintiff is not a fugitive in a related criminal case*

First, Plaintiff is not a fugitive in a related criminal case, and therefore this Court cannot apply the doctrine here. The Supreme Court has applied the fugitive disentitlement doctrine only in a subset of cases in which the party was a "fugitive" who escaped from actual or constructive custody following a criminal trial and conviction, *see, e.g., Ortega-Rodriguez,* 507 U.S. at 236-39; *Sharpe*, 470 U.S. at 681 n.2; *id*. at 721 n.1 (Stevens, J., dissenting); *Estelle*, 420 U.S. at 534; *Molinaro*, 396 U.S. at 365; *Eisler*, 338 U.S. at 191. Courts in this Circuit have at times given this doctrine a broader application that is inapplicable here. The Seventh Circuit has held, for example, that for a litigant to be considered a fugitive, he must "intentionally take a material step towards commission of the crime while in the state and then absent himself from that state." *United States v. $40,877.59 in U.S. Currency*, 32 F.3d 1151, 1156 (7th Cir. 1994). This application makes sense. Using a mere accusation against an individual as a means of disenfranchising him from the court system entirely would undermine the presumption of innocence to which he is constitutionally entitled. So courts require more than a mere warrant

6

before considering a litigant a "fugitive" for purposes of this doctrine. And for good reason: dismissing a case under the fugitive disentitlement doctrine is an extraordinary remedy, reserved only for the most egregious cases. Citing Black's Law Dictionary and entirely ignoring precedent, Defendants argue that Plaintiff is a "fugitive" only because there is an active warrant for his arrest. Neither the Supreme Court nor the courts in this circuit apply that broad a definition as a basis to dismiss a case under this doctrine. *See, e.g., Ortega-Rodriguez*, 507 U.S. 234, 236-39; *$40,877.59 in U.S. Currency*, 32 F.3d at 1156.

As an additional threshold to applying the fugitive disentitlement doctrine, courts also evaluate whether a litigant's alleged illegal activity is related to the case which the opposing party seeks to dismiss. *See, e.g., $32,420.00 in U.S. Currency*, No. 93 C 4936, 1994 WL 148697, at *1 (dismissal under fugitive disentitlement doctrine allowed only when there is a nexus between underlying criminal case and civil case); *see also Barnett v. Young Men's Christian Ass'n, Inc.*, 268 F.3d 614, 617 (8th Cir. 2001). This is to prevent a "fugitive" litigant from using a civil suit *as a means* to keep himself out of prison. *Sarlund v. Anderson*, 205 F.3d 973, 975 (7th Cir. 2000), as amended (Mar. 10, 2000). Defendants make no argument that Plaintiff's civil suit has anything to with his warrant. While a warrant has been issued for Plaintiff's arrest, Defendants have offered no proof that he committed any crime, because he has not escaped custody, he is not a "fugitive" as the Supreme Court has interpreted the term under this doctrine. The warrant it is in an entirely unrelated case which may or may not move forward if it is executed. There is no possibility this civil suit will impact in any way how that case proceeds, so there is no risk Plaintiff could somehow use this litigation to avoid the consequences of that warrant. *See id*. Thus, with Defendants having failed to establish the prerequisites to apply the fugitive disentitlement doctrine, this Court cannot dismiss this case.

7

### 2. *Plaintiff is actively participating in this case*

Even if this Court were to consider Plaintiff a fugitive, this Court cannot dismiss the case under the fugitive disentitlement doctrine because Plaintiff has fully participated in the litigation, and will continue to do so. "The fugitive disentitlement doctrine…does not automatically disqualify a fugitive from justice from maintaining an action in a federal court." *Sarlund*, 205 F.3d at 974. It applies in only the most extreme cases in which a litigant is abusing the judicial process and harassing the opposing party with impunity, while failing entirely to participate in the case. *Id.* at 975.

For instance, in *Colorado v. Platteville Police Dep't*, No. 07-CV-486-BBC, 2008 WL 3669079, at *2, a case Defendants rely on, the Court dismissed a civil-rights action based on this doctrine when the plaintiff, who had violated the terms of his supervised release and avoided being taken back into custody, was entirely unavailable to even his own counsel. *Id.* The plaintiff did not appear for his scheduled deposition, and plaintiff's counsel admitted that she did not know where he was and had not heard from him in three months, despite multiple attempts to reach him. *Id.* The plaintiff also had not responded to requests to fill out a medical-record authorization form. *Id.* Essentially the plaintiff was in the wind, and even his own attorney was unable to track him down. *See also Ortega-Rodriguez*, 507 U.S. at 239-40 (fugitive disentitlement doctrine "rested in part on enforceability concerns, and in part on a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment").

Plaintiff, on the other hand, has fully participated in this case. He has served discovery requests and responses, sought to pursue depositions, agreed to sit for his own deposition, responded to motions, engaged in the Rule 37 meet-and-confer process, completed a status report

for the Court during this shutdown, and returned an executed release for educational records. All evidence in this case establishes that Plaintiff has fully participated in discovery and will continue to do so.

### 3. *Defendants have suffered no prejudice from any discovery delays*

Indeed, dismissal would be an excessive sanction for what amounts an inconsequential two-month delay in returning discovery responses. *Kruger*, 214 F.3d at 787 ("One missed deadline is not a pattern of dilatory conduct, nor does the delay here seem of much consequence in this lawsuit "). Defendants point to no actual prejudice caused by Plaintiff's discovery delay. In January Plaintiff communicated his willingness to schedule a deposition, Dkt. 102-1 (Def. Ex. 5) at PageID 1054-55, but Defendants have not made a single attempt in the last four months to schedule it. Given the travel restrictions and stay-at-home orders in place due to the coronavirus pandemic, Plaintiff is more than willing to sit for a remote deposition, and will even give his deposition in person if Defendants merely request it. But they have not so much as asked, or even conferred at all about this issue since the beginning of March. It is disingenuous for Defendants to rely on the fact that Plaintiff's deposition is not yet complete when for four months they have made no attempt to schedule it.

At its core, Defendants' argument is an equitable one that is unsupported by case law. They argue, essentially, that any person with an outstanding arrest warrant should be barred from court. But they cite no case from this jurisdiction to support that contention, because that is not the rule in this jurisdiction. In fact, it is not the rule anywhere. The Supreme Court and courts in this circuit have continually rejected that approach, acknowledging that the doctrine must not be used merely to "preserve the court's authority and dignity." *Gutierrez-Almazan v. Gonzales*, 453 F.3d 956, 957 (7th Cir. 2006). Rather, dismissal under this doctrine must be based on pragmatic

considerations, including whether the moving party has experienced or will experience actual significant prejudice. *Id.*

Indeed, Defendants cite a flurry of cases that invoke this doctrine, but not a single one involves dismissing a case when a litigant on an outstanding warrant has complied with all his litigation obligations, as Plaintiff has here. Some of the cases Defendants cite involve criminal defendants or unlawful immigrants who have been convicted or found to have violated immigration law and flee, but still attempt to appeal their criminal sentences or deportations. *See, e.g., Bar-Levy v. U.S. Dep't of Justice, I.N.S.*, 990 F.2d 33, 35 (2d Cir. 1993). Courts' concerns in those cases are that if the criminal defendant loses his criminal appeal, he will nevertheless face no legal consequences for his related unlawful conduct. That is clearly not the case here.

Even the out-of-circuit cases Defendants cite that apply the fugitive-disentitlement doctrine in civil cases involve a litigant who has escaped from custody and committed misconduct during the litigation, like failing to appear at a deposition. *E.g., Seibert v. Johnston*, 381 F. Supp. 277, 279-80 (E.D. Okla. 1974) (refusing to hold trial when plaintiff escaped from prison on eve of trial); *Griffin v. City of New York Corr. Com'r*, 882 F. Supp. 295, 297 (E.D.N.Y. 1995) (plaintiff escaped from prison, and whereabouts were unknown even to court-appointed pro bono counsel). Neither of those factors is in play here. Contrary to Defendants' assertion, case law does not establish that courts can or should dismiss cases under this doctrine purely as a means to discourage escape or preserve judicial resources. In fact, the cases Defendants cite firmly establish that Courts should use dismissal under this doctrine sparingly, and only as a "reasonable response" to "problems and concerns" about a litigant's behavior. *See Hageman v. Morrison Cty. Sheriff's Office*, No. 18-CV-1005 (JNE/LIB), 2018 WL 7050677, at *3 (D. Minn.

Dec. 18, 2018), *report and recommendation adopted*, No. 18-CV-1005 (JNE/LIB), 2019 WL 234777 (D. Minn. Jan. 16, 2019).

Defendants have made no showing of any prejudice, escape, failure to appear, or other abuse of judicial resources. Indeed, Defendants' assertion that Plaintiff will not come testify at trial or that the Court will not be able to enforce an adverse judgment against him is completely unfounded and belies the procedural history of this case. He has not failed to appear for a deposition, and he will not fail to appear at trial. If the Court were to order Plaintiff to do something, the record so far establishes that he would comply.

Plaintiff intends to see this case to the end. An innocent man, he was in prison for over 22 years for a crime he did not commit. He is yet another victim of Defendant Guevara's malfeasance and suffered immeasurable trauma. He filed this meritorious suit to try and regain a modicum of what Defendants stole from him, and is in no way using a "completely frivolous" suit to "harass the defendants with impunity." *Sarlund*, 205 F.3d at 975. He remains fully prepared to come to Chicago to give his deposition and to participate in this case.

Dismissing Plaintiff's case for serving his discovery responses late would fly in the face of fugitive-disentitlement precedent, as well as case law governing other types of dismissal sanctions. *See Degen*, 517 U.S. at 823 (cautioning against frequent use of fugitive dismissal because it is too blunt an instrument for deterring other petitioners from absconding and for preserving the court's authority and dignity); *cf.* FED. R. CIV. P. 37(b)(2)(A)(v) (allowing dismissal as a last resort when party violates court order); *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. App'x 873, 877 (7th Cir. 2011) ("Dismissal with prejudice is an extreme sanction that should be used only as a last resort in situations where the noncomplying party displayed willfulness, bad faith, or fault…. Moreover, when sanctioning a party for discovery violations, a

district court should consider the prejudice or surprise to the party against whom the evidence is offered, the likelihood of disruption to the trial, and lesser sanctions that could cure any asserted prejudice.") (internal citations omitted); FED. R. CIV. P. 41(b) (allowing dismissal for failure to prosecute); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000) (court must give explicit warning before dismissing for failure to prosecute). In other words, dismissal is a last resort to be employed only after warnings and consideration of lesser sanctions. *See Sarlund*, 205 F.3d at 975 (dismissal is a last resort to be used only when "no measure…short of dismissal of his suit…will protect the defendants from such harassment").

Defendants have not asked this Court to consider lesser sanctions as alternatives to dismissal. Nor could they. Defendants received a remedy for the sole discovery delay they have experienced: they asked this court to compel Plaintiff to provide his discovery responses, and a few days later, Plaintiff served them. They have not asked this Court to compel Plaintiff's deposition, likely because he has agreed to give it and because they cannot even satisfy the meet and confer requirement for such a motion because they have failed to do so about this issue. This Court has likewise provided Plaintiff with no warnings of any kind because Plaintiff has not engaged in misconduct or caused any delay that would warrant any such warning. Thus this Court cannot take the extraordinary step of dismissing the case now.

## Conclusion

Plaintiff has met his obligations to Defendants and this Court. Defendants point to only one fact-based discovery delay: an inconsequential two-month delay in returning discovery responses, due in no part to Plaintiff's warrant, and identify no prejudice arising from it. Defendants cannot invoke the fugitive disentitlement doctrine under these circumstances. For

these reasons, and the reasons more fully explained above, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

Respectfully Submitted,

/s/ Rachel Brady
*Counsel for Plaintiff*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Tara Thompson
Rachel Brady
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, hereby certify that on July 24, 2020, I served the foregoing response to all counsel of record using the Court's CM/ECF system.

/s/ Rachel Brady
*Counsel for Plaintiff*