```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3     RICARDO RODRIGUEZ,              )    Docket No. 18 C 7951
                                       )
 4                    Plaintiff,       )    Chicago, Illinois
                                       )    October 13, 2020
 5            v.                       )    10:04 a.m.
                                       )
 6     CHICAGO POLICE OFFICERS         )
       REYNALDO GUEVARA, JOANN         )
 7     HALVORSEN as SPECIAL            )
       REPRESENTATIVE for ERNEST       )
 8     HALVORSEN, RICHARD CURLEY,      )
       ROBERT BIEBEL, ED MINGEY, LEE   )
 9     EPPLEN, M. SANDERS, J. MOHAN,   )
       and UNKNOWN OFFICERS; and the   )
10     CITY OF CHICAGO,                )
                                       )
11                    Defendants.      )

12
               TRANSCRIPT OF PROCEEDINGS - Telephonic Status
13              BEFORE THE HONORABLE MARY M. ROWLAND

14
       APPEARANCES:
15

16     For the Plaintiff:    MS. RACHEL E. BRADY
                             Loevy & Loevy
17                           311 N. Aberdeen Street
                             3rd Floor
18                           Chicago, IL 60607

19
       For Defendant         MS. MEGAN K. McGRATH
20     Guevara:              Leinenweber Baroni & Daffada LLC
                             120 N. LaSalle Street
21                           Suite 2000
                             Chicago, IL 60602
22

23     For the Individual    MR. JOSH M. ENGQUIST
       Defendants:           The Sotos Law Firm PC
24                           141 W. Jackson Boulevard
                             Suite 1240A
25                           Chicago, IL 60604
```

```
 1    APPEARANCES (Cont'd.):

 2
      For Defendant          MS. EILEEN E. ROSEN
 3    City of Chicago:       Rock Fusco & Connelly LLC
                             321 N. Clark Street
 4                           Suite 2200
                             Chicago, IL 60654
 5

 6    Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                             Official Court Reporter
 7                           219 S. Dearborn Street, Room 1224
                             Chicago, IL 60604
 8                           312.435.6053
                             laura_renke@ilnd.uscourts.gov
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (In open court.)

2        THE CLERK:  18 C 7951, Rodriguez v. Guevara.

3        THE COURT:  Good morning, Counsel.

4        We'll start with plaintiffs.  Put lawyers' names on

5    the record.

6        MS. BRADY:  Yes.  Good morning, your Honor.  This is

7    Rachel Brady on behalf of the plaintiff.

8        THE COURT:  Good morning.  Anyone else --

9        MR. ENGQUIST:  Good morning, your Honor.  Josh

10   Engquist with -- I'm sorry.

11       THE COURT:  No, that's okay.

12       Anyone else for plaintiff?

13       MS. BRADY:  No, nobody else, your Honor.

14       THE COURT:  Okay.

15       Defense counsel?  How about we start with the city.

16       MR. ENGQUIST:  Good morning, your Honor.  Josh

17   Engquist on behalf of defendants Halversen, Curley, Biebel,

18   Mingey, Epplen, and Sanders.

19       MS. ROSEN:  Good morning, your Honor.  Eileen Rosen on

20   behalf of defendant City of Chicago.

21       MS. McGRATH:  Good morning, your Honor.  Megan McGrath

22   on behalf of defendant Guevara.

23       THE COURT:  Anybody else?

24       Okay.  So back when the plaintiff was at large, the

25   defendants filed a motion to dismiss.

1        I've seen, I think, two status reports where

2   defendants have said they wanted some time to think about how

3   to handle the motion to dismiss.  I thought it was time that we

4   get together and talk about it.

5        I know he was arrested, I want to say, ten days ago.

6   And I saw in a -- well, I saw some press reports, but I also

7   saw in a status report, I think filed by defendants, that he's

8   been denied bond in the state court case, the criminal case.

9        So, first of all, can someone tell me, has he been

10  denied bond?  Is that still accurate?

11       MS. BRADY:  Yes, your Honor.

12       This is Rachel Brady on behalf of the plaintiff.

13       He is currently being held without bond.

14       THE COURT:  Okay.  So given that he's in custody --

15  and I assume he's at Cook County Jail.

16       Given that he's in custody, have defendants -- I mean,

17  you've reported -- and maybe someone for individual defendants

18  or maybe Ms. Rosen can take the lead here.  I know you've

19  reported to Judge Cox that you wanted some time to think about

20  your motion.  Is there something you want to argue about the

21  motion, the pending motion to dismiss?

22       MS. ROSEN:  Well -- Judge, this is Eileen Rosen on

23  behalf of the city.  And I can speak for all of the defendants.

24       So, of course, our -- our -- as I'm sure you're aware,

25  the motion is based on what was plaintiff's fugitive status.

1   We are looking at the case law to determine whether or not the

2   fact that plaintiff was a fugitive for over a year and now has

3   been arrested, not because he voluntarily turned himself in,

4   but because he got caught flying back from Mexico, whether or

5   not there's any authority in the case law that would allow the

6   motion to still be relevant, even though he's currently in

7   custody.

8            The other issue, Judge, is that it's our understanding

9   that plaintiff's case is up for status on Friday.  Based upon

10  arguments that were made at the last status hearing that was

11  held in the criminal case, my expectation is -- and maybe

12  plaintiff's counsel can speak to this because I don't know.

13  But my expectation is that their -- that the defense team in

14  his criminal case is going to be filing a motion or has already

15  filed a motion -- I don't know -- to get him out on bond

16  because they were fighting the state's motion to be -- to him

17  being held without bond pretty strenuously at the last hearing.

18  And I know that these motions get renewed.

19           So we have the additional concern that if it at some

20  point soon or at any point he does receive bond that he will

21  disappear again.  So that was the reason we asked for the three

22  weeks in the status report that we last filed with Judge Cox

23  and she granted the stay -- the three-week stay of discovery,

24  so that we could do that research and figure that out.  So

25  that's where we're at.

1          THE COURT:  Right.  And I saw the three-week stay.

2          Ms. Brady, do you know what's happening, what the plan

3     is for the status on Friday in the criminal -- in the state

4     criminal case?

5          MS. BRADY:  I do not, your Honor.

6          But I can represent that whether or not Mr. Rodriguez

7     is released on bond, he has for the last, you know, nine months

8     and will continue to make -- you know, make himself available

9     to sit for a deposition.  He's never refused to sit for a

10    deposition.  He's -- you know, defendants have never noticed

11    it.  And he has said the entire time that he would do a dep,

12    and that's still true.  So, you know, bond or no bond, he's

13    perfectly willing to sit for a deposition.

14         THE COURT:  Okay.  Well, I'm not going to get involved

15    in that.  I know that you were offering to have him sit at the

16    Mexican consulate.  And I don't know that that would have been

17    an answer to the problem.  I don't have to decide that today.

18    But I'm not -- I don't want anything that I say today to be

19    misinterpreted as sanctioning that -- okay? -- as appropriate.

20         So if Mr. Rodriguez were to be granted bond -- which I

21    don't know if that will happen -- and if he were to abscond

22    while on bond, the city and the individual defendants would be

23    well within their right to refile this motion to dismiss.

24         But I have looked at the case law that is in the

25    motion to dismiss, and specifically *Gutierrez-Almazan v.*

1    *Gonzales*.  And the way I read the case law -- and this is

2    Seventh Circuit -- says -- and this is a quote -- "[I]t is not

3    at all clear that [the fugitive disentitlement principle]

4    should be invoked in a case like this, where the party in

5    question is no longer a fugitive.  Gutierrez is not at large;

6    he is in custody.  In cases where escaped fugitives have been

7    recaptured, courts have been reluctant to impose the severe

8    sanction of disentitling them to access to the federal courts."

9          Now, I think in *Gutierrez*, that gentleman turned

10   himself in.  I think that was a -- I think that might have been

11   an immigration case.  But -- so I understand there's a

12   difference, Ms. Rosen.

13         But the case law definitely indicates that this is a

14   very harsh and severe penalty in terms of dismissing an entire

15   case based upon being a fugitive.  And the language right here

16   is "where [an] escaped fugitive[ ] [has] been recaptured."  I

17   mean, that's a quote.  So it doesn't seem to depend on somebody

18   turning themselves in.

19         They then go on that to analyze the Supreme Court

20   case, *Degen v. U.S.* at 517 U.S. 820 -- and that's a 1996 case.

21   And they say -- and this is again quoting the Seventh

22   Circuit -- "[T]he Supreme Court cautioned against frequent use

23   of fugitive dismissal, stating that it is too blunt an

24   instrument for deterring other petitioners from absconding and

25   for preserving the Court's authority and dignity.  The Court

1    emphasized that above all, pragmatic considerations should

2    guide [the Court's] application of the doctrine.  The essential

3    question, then, is ... have the petitioner's action[ ] made the

4    enforcement of ... adverse judgment impossible?"

5             So, you know, when I look at the practical

6    considerations, I don't know how long the plaintiff was a

7    fugitive.  It's -- I know that you found out about it, I

8    believe, in January.  And you had trouble -- defendants had

9    trouble for several months prior to that getting responses to

10   interrogatories.

11            But in this case, not a single defendant has been

12   deposed.  So it's not like we're at a place where, you know,

13   because of plaintiff's actions, this case has been held up

14   significantly.  And at least as of now, he's in custody and

15   discovery can proceed.

16            So if I look at pragmatic considerations -- and, you

17   know, maybe partly because of COVID, but this case was not

18   going to get tried this year.  And probably this case is not

19   going to get tried in 2021 unless defendants tell me right now

20   they're not filing motions for summary judgment.  I mean, we

21   all know how these cases go.

22            So -- these particular cases.  These Guevara cases I'm

23   talking about.

24            So, you know, I'm not seeing when I look at pragmatic

25   considerations that plaintiff's missing is a significant -- was

1    a significant setback for this case.  Now, maybe had it been at

2    a different point in this case, come later in the case, had he

3    not been apprehended when he was apprehended, you know, the

4    factors would be different.

5         But the facts as I see them, as they played out in

6    this case, given the case law, I'm going to deny the motion to

7    dismiss.  Now, it's certainly denied without prejudice.  And if

8    you find other case law, if this case law has changed, you

9    know, you can file something.  I don't want you to just file

10   something to reconsider, but if there's -- if the case law is

11   different than what I'm reading.  But these are the cases you

12   cited to me.

13        And the other case that you cited to me, *Sarlund v.*

14   *Anderson*, it also rests on the Supreme Court *Degen*.  And it

15   says -- the quote in there is the fugitive disentitlement

16   doctrine, quote, "does not automatically disqualify a

17   fugitive ... from maintaining an action in a federal court.

18   Degen was living openly in Switzerland," and Switzerland

19   refused to extradite him.

20        And, you know, so I don't think that the

21   disentitlement doctrine is as airtight as maybe defendants

22   would like it to be.  And the facts in this case I think

23   require that I deny the dismissal motion.

24        If plaintiff is granted a bond in his criminal case

25   and he goes missing, that will present a different set of facts

1    and obviously the case will be in a different position because

2    by that point, I assume, you will have, you know, started on

3    the depositions and it will be his turn to be deposed.  And if

4    he's not available for his deposition and available to be

5    present at trial, that will present, obviously, a different set

6    of facts.  Okay?

7              MS. ROSEN:  Yes, Judge.

8              I will say just for the record that the warrant was

9    issued in August of 2019.  So we know that he's been gone and

10   on the run since August of 2019, which is well over a year.

11             THE COURT:  Okay.  I did not see that.

12             MS. ROSEN:  So just -- yeah.  Just to be -- just

13   for -- I appreciate that it doesn't change what you're saying,

14   but just so that it's clear on the record.

15             We'd ask, Judge, if plaintiff's counsel could let us

16   know immediately if he's released on bond so that we are aware

17   of those circumstances.

18             THE COURT:  Why don't we -- why don't I say that -- as

19   part of my order today that -- let's see.  His hearing is

20   sometime Friday at 26th Street?

21             MS. ROSEN:  Yes, Judge.

22             THE COURT:  Okay.  So how about by Monday -- let me

23   get a calendar here.

24             How about by the 19th, plaintiffs file a status report

25   as to what happened regarding bond in the state court

1    proceedings.  And then we'll all know.

2                MS. BRADY:  We can do that, Judge.

3                THE COURT:  Okay.  Yeah.  And then we'll all know.

4    And if he's granted bond but he still has to do something to

5    post it, let us know that; if bond is denied.  You know, let us

6    know exactly what happens in court.  And then also if bond is

7    granted, you know, has he met that bond or what the status of

8    that is.  Okay?

9                MS. BRADY:  Yes, Judge.

10               THE COURT:  Okay.  And then I know you have stuff

11   going on with Judge Cox in terms of contemplating the, you

12   know, finishing up discovery.  Or do you have a close of

13   discovery or -- I know she's seeing you at the end of the year.

14   Is that to wrap up discovery or just to report --

15               MS. ROSEN:  No, Judge.  She extended the discovery

16   cutoff to -- I think it's end of May of 2021.

17               THE COURT:  Okay.  Yeah.  And thank you, Ms. Rosen.  I

18   didn't -- I saw all the details about the interrogatory

19   responses, and I know that that lagged through the winter,

20   January, February, March of this year.  But I didn't see that

21   the warrant had issued in 2019.  So he had absconded for a

22   year.

23               But even taking that into account, I don't -- as a

24   practical matter, I don't know that that impacted this case

25   significantly because I don't know that you would have gotten

1    to his deposition just given the amount of discovery and the

2    length that discovery takes in these cases, which, Ms. Rosen,

3    you know better than I know how long these cases take to get

4    ready for trial.  So --

5         MS. ROSEN:  Sure, Judge.  I mean, that's part of our

6    concern -- right? -- is that -- you know, is that the

7    defendants are going to be -- not to rehash what we've already

8    said, but that, you know, we're -- not only are we going to be

9    doing months and months and months and potentially years of

10   discovery on the underlying case -- you know, bifurcation was

11   not granted in this case, so we're talking about *Monell*

12   discovery that is enormous.

13        I can tell you in every single one of the other

14   Guevara cases where *Monell* discovery is proceeding, we're not

15   even close to getting it completed.

16        And so, you know, the city's going to put out all of

17   this -- expend all of these resources both in time and money

18   to -- to defend this case, and then at some point, if he

19   disappears again, then, you know, these expenses and resources

20   are wasted.  So, you know, that's the thing that we were

21   contemplating in the context of the recapture.

22        I understand your ruling.  We will if we find

23   different -- or case law that applies to the circumstances we

24   find ourselves in, we will bring it to you.

25        But, you know, it's -- I understand that whenever we

1  get to the plaintiff's dep, you know, we get to the plaintiff's

2  dep.  But if we've spent a year and a million dollars defending

3  and then he's gone, and we know he has this history and we know

4  he didn't turn himself in, and, you know, he has no interest in

5  remaining in custody based on everything we've heard so far in

6  his criminal case, that's the concern.

7         But as you say, the case law that we provided to you

8  is what it is.  And certainly if we find something different

9  that addresses the facts as we find ourselves now, we'll bring

10 it to the Court's attention.

11         THE COURT:  Right.  But the case law doesn't say that

12 because you've been a fugitive, you don't have a right to

13 pursue your -- what is -- what is alleged to be a

14 constitutional violation.

15         Now, maybe that didn't happen here.  But right now

16 that's his allegation.  And in his criminal case, of course,

17 right now, he's presumed to be innocent.  And maybe that's not

18 true either.  But that's -- you know, that's where he sits

19 legally right now.

20         And so I have to balance all of those concerns in

21 terms of do I slam this door shut on him.  And what the case

22 law is telling me is that right now I'm not permitted to do

23 that.

24         Now, I can tell you, Ms. Brady, that if he were to

25 abscond again, the idea that the city would have to go to the

1    Mexican consulate to take his deposition -- I mean, I'm not

2    going to issue an advisory opinion, but I think the city would

3    be in -- have a pretty strong argument that that's not making

4    himself available to be deposed.

5         And it doesn't answer the question about how would we

6    go to trial because, believe me, I've got a lot going on here

7    to have trials during COVID.  Now, maybe COVID will be over by

8    then, but I'm not holding a trial piping in the Mexican

9    consulate.

10        So if he wants to pursue this --

11        MS. BRADY:  Your Honor --

12        THE COURT:  So if he wants to pursue this action, he's

13   going to stick around and he's going to make himself available

14   for discovery.  And if he's not interested in this action, he

15   can voluntarily dismiss it.  Okay?

16        MS. BRADY:  Your Honor, can I say one --

17        THE COURT:  So that's all I've got to say about that.

18        You may say one thing, yes.

19        MS. BRADY:  Your Honor, can I say one thing?

20        THE COURT:  Yes.

21        MS. BRADY:  So I just want to correct the record on

22   what exactly has been going on with the Mexican consulate

23   situation.  So Mr. Rodriguez has never demanded to hold his

24   deposition at the consulate.  It was a suggestion while the

25   parties were meeting and conferring about -- about how the

1  deposition would take place.

2          So I just want to assure the Court and -- your Honor

3  and defendants that, you know, if they're not willing to do it

4  at the Mexican consulate, we can do it somewhere else and that

5  it has never been a demand for it to take place at the

6  consulate.  So I just wanted to correct the record about that.

7          THE COURT:  That sounds more reasonable.

8          MS. ROSEN:  Judge, I disagree --

9          MR. ENGQUIST:  Yes.

10          MS. ROSEN:  -- with that, but we don't need to get

11  into this now.  There's e-mail communications that make it very

12  clear that they wanted the dep to go forward at the Mexican

13  consulate and that if we objected to it that it was the

14  defendants gaming the system in some way to ensure he got

15  arrested.  So -- but we don't need -- I understand the Court's

16  ruling, and I understand where we are on the facts.  And I

17  guess we'll see what he does next.

18          THE COURT:  Okay.  And I'll look forward to the status

19  report on Monday.

20          Have a good day, everybody.

21          MS. ROSEN:  Thanks, Judge.

22          MR. ENGQUIST:  Thank you.

23          MS. BRADY:  Thank you, your Honor.

24          THE CLERK:  This court is adjourned.

25      (Concluded at 10:24 a.m.)

1              C E R T I F I C A T E

2         I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4

5    _/s/ LAURA R. RENKE_____              _November 9, 2020_
     LAURA R. RENKE, CSR, RDR, CRR
6    Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25