```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

RICARDO RODRIGUEZ,                )    Docket No. 18 C 7951
                                  )
                 Plaintiff,       )    Chicago, Illinois
                                  )    September 28, 2023
           v.                     )    10:00 a.m.
                                  )
CHICAGO POLICE OFFICERS           )
REYNALDO GUEVARA, JOANN           )
HALVORSEN as SPECIAL              )
REPRESENTATIVE for ERNEST         )
HALVORSEN, RICHARD CURLEY,        )
ROBERT BIEBEL, ED MINGEY, LEE     )
EPPLEN, M. SANDERS, J. MOHAN,     )
and UNKNOWN OFFICERS; and the     )
CITY OF CHICAGO,                  )
                                  )
                 Defendants.      )


         TRANSCRIPT OF PROCEEDINGS - Telephonic Status
            BEFORE THE HONORABLE MARY M. ROWLAND


APPEARANCES:


For the Plaintiff:     MS. RACHEL E. BRADY
                       Loevy & Loevy
                       311 N. Aberdeen Street
                       3rd Floor
                       Chicago, IL 60607


For Defendant          MR. THOMAS MORE LEINENWEBER
Guevara:               Leinenweber Baroni & Daffada LLC
                       120 N. LaSalle Street
                       Suite 2000
                       Chicago, IL 60602


For the Individual     MR. JOSH M. ENGQUIST
Defendants:            The Sotos Law Firm PC
                       141 W. Jackson Boulevard
                       Suite 1240A
                       Chicago, IL 60604
```

```
1      APPEARANCES (Cont'd.):

2
       For Defendant          MS. EILEEN E. ROSEN
3      City of Chicago:       MS. THERESA B. CARNEY
                              Rock Fusco & Connelly LLC
4                             321 N. Clark Street
                              Suite 2200
5                             Chicago, IL 60654

6
       Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
7                             Official Court Reporter
                              219 S. Dearborn Street, Room 1224
8                             Chicago, IL 60604
                              312.435.6053
9                             laura_renke@ilnd.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (In open court via telephone.)
 2              THE CLERK:  18 C 7951, Rodriguez v. Guevara.
 3              THE COURT:  Okay.  Good morning.  Can we get
 4   appearances on the record.  We'll start with plaintiff.
 5              MS. BRADY:  Good morning, your Honor.  This is Rachel
 6   Brady on behalf of the plaintiff.
 7              THE COURT:  Good morning.
 8              Anyone else?
 9              MR. ENGQUIST:  Good morning, your Honor.  Josh
10   Engquist on behalf of defendants Halvorsen, Curley, Biebel,
11   Mingey, Epplen, and Sanders.
12              THE COURT:  Can I get your name again?  I'm sorry.
13              MR. ENGQUIST:  Sure.  It's Josh Engquist,
14   E-N-G-Q-U-I-S-T.
15              THE COURT:  Great.  Thanks.
16              And who else?
17              MS. CARNEY:  Good morning, your Honor.
18              MR. LEINENWEBER:  Good morning, Judge.
19              MS. CARNEY:  Theresa -- sorry, Tom.  Go ahead.
20              MR. LEINENWEBER:  Good morning, Judge.  Tom
21   Leinenweber on behalf of defendant Guevara.
22              THE COURT:  Good morning.
23              MS. CARNEY:  And Theresa Carney on behalf of the City
24   of Chicago.  Eileen Rosen will also be joining, but,
25   unfortunately, her train got stuck behind a train that stopped
```

1  working.  So she's a little delayed this morning.
2              THE COURT:  Okay.  Anyone else?
3              MS. CARNEY:  I think that's it.
4              THE COURT:  Okay.  All right.  So last time we met,
5  everything -- everyone was in agreement, and then I got a
6  status report, obviously.
7              So let me ask first.  There's an expert that you're
8  trying to get -- a rebuttal expert you're trying to get I think
9  a final dep on.  Let me just ask Ms. Brady.  Is that resolved?
10             MS. BRADY:  Yes, your Honor.  I believe that the
11 parties are still working to schedule her deposition, but I --
12 I'm pretty sure it's going to be at the end of October.
13             THE COURT:  End of October.  Okay.
14             And -- okay.  So that -- I'm not so worried about
15 that.
16             So as I understand the dispute, defendants want to do
17 a round of *Daubert* briefing, and the experts, Ms. Brady, as I
18 understand it, all go to *Monell*.  Correct me if I'm wrong.  And
19 then defendants want to have a round after that, a round of
20 summary judgment briefing.
21             Do I have the dispute -- do I understand the dispute?
22             MS. BRADY:  Yes, your Honor.
23             MS. CARNEY:  You do, your Honor, yes.
24             MS. BRADY:  Okay.  This is Rachel Brady.
25             I believe that the dispute relates only to the *Monell*

1  experts, and the individual defendants' experts aren't at
2  issue.
3          THE COURT:  Okay.  So my concern, obviously, is, you
4  know, to do a round of *Daubert* briefing, you know, that's going
5  to be months of briefing.  And, you know, you guys ask for a
6  lot of extensions, and I understand you're all busy, and I'm
7  happy to accommodate that.  Then I take a while to rule.
8          So we're talking about a year, potentially, for that
9  and then a year for summary judgment.  So obviously 2018 case,
10 I'm very, very reluctant to do that.
11         And I have a lot of motions for summary judgment where
12 *Daubert* motions come in with them.  I mean, almost every
13 product liability case, you know, causation is at issue and the
14 name of the game is the experts, and the defendants are
15 challenging the experts and then, you know, challenging whether
16 causation can be established without the experts.
17         And I'm not understanding what's so unique about this
18 case.  I mean, even in kind of simple cases this happens where
19 the expert is pivotal to establishing liability and I get a
20 slew of *Daubert* motions in conjunction with summary judgment.
21         So why -- I mean, what's happening here?  I mean, I
22 looked up *Guevara* yesterday, and there's, like, 15 new *Guevara*
23 cases in 2023.  So I'm extremely reluctant to set some kind of
24 precedent in this case that would -- that we would start this
25 kind of procedure.

1            MS. BRADY: So, your Honor --

2            MS. CARNEY: If I could --

3            MS. BRADY: -- this is Rachel --

4            MS. CARNEY: -- Theresa Carney --

5            THE COURT: Okay. Hold on. Hold on.

6            MS. CARNEY: Sorry.

7            MS. BRADY: Go ahead, Theresa.

8            MS. CARNEY: This is Theresa Carney for the City.

9            I figured I'd start since the issue is mostly the

10 *Monell* claims, that the experts retained --

11            THE COURT: Only the *Monell*. Only the *Monell*. It's

12 only the *Monell* claim, right?

13            MS. CARNEY: It's only the *Monell* claims, yes.

14            So the problem as we see it is that the three

15 experts -- as you said, the *Monell* theories are entirely

16 dependent on these experts. And it is our strong belief that

17 *Daubert* motions will bar their testimony and opinions as it

18 relates to the *Monell* claims entirely.

19            This has been apparent because of -- throughout the

20 depositions that the flaws in their analysis, in particular in

21 regards to the coding, the fact that nothing that they can do

22 can be validated or replicated, is so striking.

23            And if you recall, your Honor, in these cases,

24 hundreds and hundreds of files have been produced, analyzed by

25 plaintiff's experts. And our -- it is our position that if we

1   can bar those -- those files and those experts from coming in,
2   the scope of the summary judgment motions will then be much
3   smaller and much more manageable and actually be more efficient
4   for the Court to rule on rather than having to sift through the
5   *Monell* theories and the *Daubert* theories at the same time.
6       For example, one of the plaintiff's experts that's an
7   expert in this case, he has -- reports have been debunked so --
8   so thoroughly in that -- in the depositions that they have
9   started to withdraw him in other cases.
10      And so it is our belief and opinion that if we can get
11  these *Daubert* briefings done first, then it will expedite
12  summary judgment for your Honor.  And then, quite frankly, as
13  you said, there's so many different *Guevara* cases coming down
14  the pipeline.  This will then expedite the other *Guevara* cases
15  because these *Daubert* -- these experts are used throughout the
16  first batch of *Guevara* cases.
17      And so if we can streamline these *Monell* theories by
18  reducing the -- and almost eliminating the experts, then
19  summary judgment will, in fact, be streamlined for the rest of
20  the *Guevara* cases.
21      THE COURT:  Okay.  So, first of all, it's not
22  uncommon --
23      (Ms. Rosen joins the proceedings.)
24      THE COURT:  -- in other cases that I might even have,
25  you know, six experts, seven experts -- okay? -- and I have

1   *Dauberts* on all of them.  Okay?  On a big patent case,
2   that's -- what you're telling me -- I'm not daunted by what
3   you're telling me.  I don't know what these experts are saying.
4   I've never tried a *Guevara* case, but I'm not daunted by what
5   you're telling me.
6           And the defendants in those cases say -- you know, the
7   entire case rides -- rises and falls on these experts because
8   if the expert is out as to whether or not my patent infringes
9   this patent or a blah, blah, blah, blah, blah -- I couldn't
10  even tell you about what these patent lawyers say because it
11  would make your head spin.
12          But that's the case.  So -- and I don't do in those
13  cases -- I don't spend a year talking about *Daubert* and then a
14  year talking about summary judgment.  I mean, I can't even
15  imagine doing that.  So I'm not really following you.
16          I do -- I am -- I am thinking about this.  I mean, do
17  you want to do *Daubert*?  And if I let the experts in, you're
18  waiving summary judgment?  I mean, you're telling me that if
19  these experts come in, this is disputed facts and Mr. Rodriguez
20  gets a trial on *Monell*.  So you don't need to do Rule 56 briefs
21  because that -- that I'm -- that's music to my ears.
22          MS. CARNEY:  Your Honor, I don't believe --
23          MS. ROSEN:  Good morning --
24          MS. CARNEY:  Oh, sorry.  Eileen Rosen is on, so I'll
25  let her --

1 MS. ROSEN: Good morning, Judge.

2 THE COURT: Well, I'm just -- I'm just thinking out
3 loud. But I'm saying, you know, if you're telling me that the
4 fight here is whether or not these experts are viable and you
5 want to focus your attention on that and that they're so
6 ludicrous they're not going to be viable -- and I don't know if
7 the plaintiffs would agree with this because I saw in the
8 status report that plaintiff is saying, "Well, you know, we
9 have other -- we have other evidence aside from the expert."
10 So, you know, I'd have to hear from them on this.

11 But if what you're telling me is once we bump these
12 experts out -- and I don't even know how many there are. And I
13 know there are different *Monell* theories. But, you know, if we
14 get rid of the expert on eyewitness testimony, if that's one of
15 the issues, then, you know, that *Monell* claim is done.

16 Okay. Then let's just do *Daubert* on that. And if
17 that expert is coming in, then we don't need summary judgment
18 on that issue. Then that's a question for the jury. They can
19 hear the expert.

20 MS. ROSEN: Judge, this is Eileen Rosen. I apologize.
21 I don't know. My train got delayed by another train.

22 THE COURT: Don't worry about it.

23 MS. ROSEN: So that's not the case. We have
24 additional arguments to make. The City would have additional
25 arguments to make on *Monell* separate and apart from the fact

1  that they can't sustain their burden of proof without their
2  experts. We have causation issues; we have other issues.
3  So it wouldn't be *Daubert* or nothing. So if the Court
4  is not inclined to stagger it, then, you know, we're not in a
5  position to say --
6  THE COURT: Okay.
7  MS. ROSEN: -- no 56 -- no Rule 56 motion.
8  THE COURT: All right. Fair enough.
9  Okay. Well, then I'm -- one thing I said, Ms. Rosen,
10 is I pulled up *Guevara* yesterday just on the, you know,
11 computer. And as you know better than me -- because I don't
12 think I have any of the new *Guevara* cases, but there's a slew
13 of them in 2023. And I'm very reluctant to do what I think is
14 a very unusual process here by severing because we're -- I
15 mean, in my estimation, we're talking about adding two years to
16 the case before we would even set a trial.
17 And I just -- I just can't -- I can't do that to a
18 2018 case. I just can't.
19 I mean, I'm going to give you plenty of time to brief.
20 You're telling me, "Well, this is a really heavy lift. I have
21 to prepare four motions for *Daubert* or whatever there are, you
22 know, four or five *Daubert* challenges, and then I've got to
23 file a motion for summary judgment."
24 Okay. I'm not going to give you only three weeks to
25 do that. But I'm not going to sever.

1          MS. ROSEN: Fair enough.

2          THE COURT: Okay. So you can propose for me whatever
3   schedule you want to schedule. I'm happy to do that. I'm
4   happy to accommodate that. I don't know if you're waiting for
5   this end of October rebuttal deposition or not, but I'm --
6   whether you are or aren't, I'm happy to give you whatever
7   schedule you need. So you can just submit that to my proposed
8   order box I don't know -- Dawn? -- sometime late next week.

9          MR. ENGQUIST: Your Honor, I --

10         MS. ROSEN: That's fine, Judge.

11         MR. ENGQUIST: I'm sorry. Your Honor, this is Josh
12  Engquist. Just one point for clarification just for the
13  individual officers.

14         THE COURT: Yes, right.

15         MR. ENGQUIST: We would have -- I mean, there are some
16  experts. Specifically, there's a police procedure expert and
17  there's some other experts specifically against the officers.

18         From what I'm hearing, plaintiff doesn't intend to
19  rely upon them to fight summary judgment, which is fine for me.
20  But if you want all of the *Daubert* motions filed at once,
21  then --

22         THE COURT: No. No.

23         MR. ENGQUIST: Okay.

24         THE COURT: So if you just want to challenge someone
25  about, you know, can they testify at trial if there's a trial,

1  then prior to trial -- let's say we're going to trial on
2  May 1st, 2025.  Prior to trial, there will be a motion
3  in limine due date, right?  At that point you're going to file
4  a *Daubert* motion as to Experts X, Y, and Z testimony.
5           MR. ENGQUIST:  Okay.  I just wanted to make sure, your
6  Honor.  I didn't want to be blocked from being able to do
7  *Daubert* motions later on down the road.
8           THE COURT:  No, no.  Thank you.
9           Does everybody understand that?
10          MS. BRADY:  Yes, your Honor.  This is Rachel Brady for
11 the plaintiff.
12          I just want to clarify.  Mr. Engquist suggested that
13 plaintiff will not be relying on experts in order to create
14 disputes of fact or present disputes of fact at summary
15 judgment, and that's not true.
16          MR. ENGQUIST:  No.
17          MS. BRADY:  Plaintiff does intend to incorporate
18 potential expert testimony as one source of evidence that
19 creates a factual dispute.  I don't think it's relevant for
20 these purposes, but I just want to clarify the record.
21          THE COURT:  Okay.  So I'm not in the weeds on that, so
22 I don't know what's being relied upon.  But, Mr. Engquist, do
23 you understand that?
24          MR. ENGQUIST:  I -- I'll figure that out.  I didn't
25 quite -- I didn't understand that they would be relying upon

1  the experts.  Everything I've heard before was relying upon the
2  experts for -- for the *Monell* part of it.  I never thought they
3  would be -- try to rely upon the police procedure expert to try
4  to create an issue of fact.
5            But I will take that consideration, I guess.
6            THE COURT:  Okay.  Very good.  Now, so that's that.
7            Then there was an issue about Mr. Guevara.
8            MS. BRADY:  Yes, Judge.  This is Rachel Brady on
9  behalf of the plaintiff.
10           Defendant Guevara in this most recent status report
11 walked back his assertion that he would not be moving for
12 summary judgment.  As we've said a couple of times, there's
13 absolutely no good-faith basis for him to file for summary
14 judgment given his assertion of the Fifth on all questions --
15 all the questions relating to his misconduct in this case and
16 other cases, combined with the fact that there is evidence --
17 additional evidence of misconduct and constitutional
18 violations.
19           It seems like a -- just a waste of resources for
20 Guevara to be -- to be moving for summary judgment.  He has
21 walked back his assertion that he wouldn't move for summary
22 judgment, and I'm hoping the Court can address that now and
23 save the parties the time and resources of briefing.
24           THE COURT:  Mr. Leinenweber?  Is that who I have here
25 for Guevara?

1     MR. LEINENWEBER: Thank you.
2     THE COURT: I don't think you were in court last time
3  we talked.
4     MR. LEINENWEBER: I believe I was, Judge. I can't
5  recall.
6     Judge, as we stated in the -- in the report, you know,
7  we're well aware of what the standards are. We believe that
8  if -- in some of the counts, if not all of the counts, we have
9  arguments of merit regarding summary judgment on behalf of
10 Mr. Guevara. I think it's -- I think it would be a waste of
11 this Court's time to assume that we would file something
12 knowingly -- knowingly that's improper. That would never
13 happen. And it wouldn't happen here.
14    So I actually think it would be a waste of this
15 Court's time for us to have any type of pre-summary judgment
16 hearing on whether he can file for summary judgment.
17    THE COURT: Oh, well, I'm not doing that. This is it.
18 This is the hearing.
19    I will tell you I checked the law on this yesterday
20 just very briefly. But -- and it's not a basis to -- well,
21 it's certainly not a basis to grant summary judgment. I think
22 it's not a basis to deny summary judgment based on somebody
23 taking the Fifth.
24    There's a long string cite that I can give you about
25 that. So I can't order that Guevara can't file for summary

1 judgment. And I'll just -- you know, I just trust that you're
2 doing this in good faith, and I'm -- you know, I don't want to
3 get a sanctions motion with this -- okay? -- because I'm
4 already going to have ten motions here, I can tell. So I don't
5 want to see an eleventh motion that's a motion for sanctions.
6 So just be sure you have a good-faith basis to file it because
7 I don't --
8       MR. LEINENWEBER: Yes.
9       THE COURT: -- I'm not a fan of issuing sanctions. I
10 don't want to be spending my time addressing sanctions because
11 I'm busy and you're busy.
12       MR. LEINENWEBER: Yes.
13       THE COURT: Okay?
14       MR. LEINENWEBER: Yes, I understand that completely,
15 Judge. You can count on me.
16       THE COURT: Okay. All right.
17       So if you're going to file one, make sure you have a
18 strong basis because you've already been to trial on these
19 cases a couple of times. So, you know, let's make sure you're
20 moving -- for summary judgment, there's no material facts in
21 dispute that's going to get them to trial. All right?
22       You've already been down this road. I actually looked
23 at the first one of these cases. It was in front of Judge
24 Grady. There were no motions for summary judgment filed. It's
25 a 2005 case. No motions for summary judgment filed. There's

1    one motion on one count because of a statute of limitations
2    change from the Supreme Court.  No motions for summary judgment
3    were filed.  And the case went to trial.
4         So everybody might want to look at that docket.
5         MR. LEINENWEBER:  Yes, your Honor.
6         THE COURT:  Anyway, we're in 2023 now.
7         So somebody get together, give me your proposed
8    schedule.  I'll enter whatever schedule you propose.  Okay?
9         Everybody have a good day.
10        MS. ROSEN:  Judge, one other thing.
11        MR. LEINENWEBER:  Thanks, Judge.
12        THE COURT:  One more thing.  Okay.
13        MS. ROSEN:  I just have one more thing.  It's Eileen
14   Rosen, Judge.  Sorry.
15        The other thing that I'd like to raise is the parties
16   have had some preliminary settlement discussions.  And the City
17   believes that perhaps a settlement conference would be helpful.
18        So I don't know if the Court wants to hear -- have the
19   settlement conference or if you want to refer us to the
20   magistrate.  But this might be a time to pursue settlement
21   before we undertake all of this briefing that we've been
22   talking about this morning.
23        THE COURT:  All right.  Well, don't bury the lead,
24   Ms. Rosen.
25        MS. ROSEN:  I'm sorry, Judge.

1    THE COURT:  Ms. Brady?  Does that make sense,
2 Ms. Brady?
3    MS. BRADY:  Yes, Judge.  This is a bit of a departure
4 from our -- comes as a bit of a surprise, and I'm certainly in
5 no position to speak for the -- all of the *Guevara* cases, at
6 least the older ones.  But we're absolutely willing to
7 participate.
8    But it was my understanding that the parties were just
9 very, very far apart in their valuations of this case.  If the
10 City is willing to negotiate and thinks that it would be
11 productive knowing our respective positions, we would be
12 interested to participate.
13    MS. ROSEN:  And just to be clear, Judge, I was
14 speaking -- we're not -- I'm not talking about all the cases.
15 I'm talking about this particular case and a conversation that
16 was had between Mr. Soto and Mr. Loevy.  And based on those
17 discussions that happened a couple weeks ago, the City believes
18 that perhaps this is one that could get resolved.
19    THE COURT:  Okay.  Well, I would be happy to -- I
20 don't know who the -- I'm not in front of my computer, so I
21 don't know who the magistrate judge is.  I think that -- I
22 mean, I'd be happy to be involved.  I have a terrible record
23 with Arthur Loevy -- terrible -- with getting anything settled.
24 I've never tried to settle anything with Jon Loevy.  I'd be
25 happy to be involved.  I'd be happy to send it to the

1 magistrate judge.

2 Why don't we do this. You guys next week are going to
3 send me a schedule. Why don't you just include in there a
4 sentence, "We want to" -- "We do want" -- so, Ms. Brady, you
5 can go back to your folks and say, "What do we want to do?"
6 And you can say, "We do want a settlement conference," or "We
7 don't think it's a good idea," just to make sure we're on the
8 same page.

9 I believe you, Ms. Rosen. I'm sure this conversation
10 happened, but just so we can be sure. And you can take that
11 into account in terms of the scheduling. So if we're going to
12 do that, set the scheduling out two months, you know, so we
13 have time to get you in.

14 And I'm not sure. Is the magistrate judge Valdez on
15 this?

16 MS. CARNEY: No, your Honor. It's Judge Hotaling.

17 THE COURT: Oh, so it's been transferred, yeah.

18 MS. CARNEY: Been transferred.

19 THE COURT: So she's very new. So it was with Judge
20 Cox. Is that what happened?

21 MS. CARNEY: It was.

22 THE COURT: Yeah. So you can just tell me you want to
23 go to the magistrate judge, or I'm happy to see you. I'm
24 just -- just warning you of my track record with Arthur Loevy,
25 so take that with a grain of salt.

1       Okay.  So just let me know if you want to come in.
2  I'm happy to have you in.  I'm happy to have you in.  I'll lock
3  you in the jury room, won't let you out till we get it done.
4  That's my technique.  That's my technique, how to get to yes.
5       Okay.  Yeah, let me know.  That sounds great.
6       MS. ROSEN:  Okay.  Thanks, Judge.
7       THE COURT:  All right.  Everybody have a good day,
8  uh-huh.
9       MS. ROSEN:  Thank you.
10      MR. ENGQUIST:  Thank you, your Honor.
11      MR. LEINENWEBER:  Thanks, your Honor.
12     (Concluded at 10:22 a.m.)
13                    C E R T I F I C A T E
14     I certify that the foregoing is a correct transcript of the
15  record of proceedings in the above-entitled matter.
16
17  */s/ LAURA R. RENKE*                                *October 6, 2023*
    LAURA R. RENKE, CSR, RDR, CRR
18  Official Court Reporter
19
20
21
22
23
24
25